JAMES LOGUE V. SOUTHERN KANSAS RAILWAY COMPANY OF TEXAS.

No. 2354.  Decided June 17, 1914.

**1.—Practice on Appeal—Rendering Judgment.**

The Court of Civil Appeals may reverse a judgment on the weight of the testimony; but that court can not render judgment if the evidence, when considered in the light most favorable to the party prevailing in the trial court, would sustain his judgment.  (P. 448.)

**2.—Railway—Contract—Authority of President—Location of Station and Offices.**

The president of a railway company has no authority to bind it by contract to locate and forever maintain a station and its principal offices at a certain place, except as such contract may be authorized or ratified by its board of directors.  Kansas City M. & O. Ry. Co. v. City of Sweetwater, 104 Texas, 324, followed.  (Pp. 449, 450.)

**3.—Same—Ratification—Notice.**

The occupation by a railway of land dedicated for use by it as right of way and depot grounds, did not charge the directors with knowledge of a private agreement between its president and the grantor, not shown by record, that a station and its general offices should be forever maintained at that place, from which ratification of such contract by the directors could be inferred. (P. 451.)

Error to the Court of Civil Appeals, Fourth District, in an appeal from Armstrong County.

Logue sued the railway company and obtained a judgment which was reversed and rendered in favor of defendant on its appeal.  Appellee thereupon obtained writ of error.

*R. E. Carswell, J. G. Hazelwood, N. A. Stedman,* and *F. A. Williams,* for plaintiff in error.—The evidence is sufficient to show that under the agreement between Montgomery and the Panhandle Railway Company, as testified to by him, having been acquiesced in and actually performed by both parties, a right in equity, in favor of Montgomery and for the benefit of the lands retained by him, was imposed as a burden upon the lands donated by him to said railway company, enforceable by him and his assigns against said railway company and its assigns and successors receiving and acquiring the same with notice, and the court properly submitted the issues to the jury.  11 Cyc., p. 1078, and authorities there cited; Whitney v. Union Ry. Co., 71 Am. Dec., 717-718; Talmadge v. Bank, 26 N. Y., 105; Lowrance v. Wood, 118 S. W., 552; Railway Co. v. Griffin, 8 N. E., 451; Bridgman v. Railway Co., 58 Vt., 198; Gilmer v. Railway Co., 79 Ala., 569; Lynch v. Columbia College, 70 N. Y., 440; Parker v. Nightingale, 83 Am. Dec., 632; Railway Co. v. Ortiz, 75 Texas, 602; City of Tyler v. Railway Co., 99 Texas, 491; City of Tyler v. Railway Co., 87 S. W., 238; Railway Co. v. Jones, 82 Texas, 156.

The undisputed fact that the Panhandle Railway Company had no title to the land constituting its right of way, etc., except the nominal title of bare possession, and that the legal title was in Montgomery or his successors, knowledge of which facts must necessarily be imputed to all persons dealing with it in reference to said land, is sufficient to

excite inquiry as to the right by which it occupied the land, and the slightest inquiry would have led to the knowledge of the agreement in question. This is sufficient to constitute notice of such agreement. Railway Co. v. Ortiz, 75 Texas, 602; Wade, Law of Notice, sec. 18; Sergent v. Ingersoll, 7 Penn. St., 340; Bishop v. A. Copyholder, Freen Ch., 137; Knapp v. Bailey, 79 Me., 195.

The charter of the Panhandle Railway Company fixed its principal office and place of business at Washburn, in Armstrong County. Said railway company, as found by the jury, also entered into a contract to locate and forever maintain its office and principal place of business at Washburn. By the terms of articles 4367 and 4492, Sayles' Civil Statutes, the Panhandle Railway Company was forbidden to remove its tracks and office from Washburn under these circumstances, and the Legislature granted it authority to do so only on condition that it would pay all damages arising by reason of such removal. City of Tyler v. Railway Co., 99 Texas, 491; same case by Court of Appeals, 87 S. W., 238.

The evidence conclusively showed that appellant had legal notice of the agreement in question when it acquired the Panhandle Railway Company's plant, and the court did not err in submitting that issue to the jury. Railway Co. v. Ortiz, 75 Texas, 602.

If the board of directors did not authorize any person to make this contract with Montgomery the evidence authorized and sustained a finding that it ratified the contract after it was made. 10 Cyc., 1076, 2, 1078e, 1080, 4; Railway Co. v. Ortiz, 75 Texas, 602.

*Terry, Cavin & Mills, Madden, Trulove & Kimbrough,* and *F. M. Ryburn,* for defendant in error.—The pleadings and evidence are insufficient to show a right of action in favor of plaintiff and against defendant, for that the same do not sufficiently show that there was a binding or enforcible contract entered into between R. E. Montgomery and the Panhandle Railway Company, by which said company became obligated to maintain forever its road, depot and offices at Washburn. Rev. Stats., arts. 661, 667, 4352, 4380, 4381, 4386, 4387, 4388; K. C., M. & O. Ry. Co. v. City of Sweetwater, 104 Texas, 324; Merriman v. Bush, 116 Pa. St., 276; Abbott v. Hapgood, 150 Mass., 248; Moore, etc., Hardware Co. v. Towers Hardware Co., 87 Ala., 206.

MR. CHIEF JUSTICE BROWN delivered the opinion of the court.

In order to place the case properly before the court we will copy from the opinion of Chief Justice Fly:

"Appellee sued appellant for damages alleged to have accrued to him by reason of the depreciation in value of town lots and lands in and near the town of Washburn, in Armstrong County, Texas, the depreciation arising from the act of appellant in taking up its rails and discontinuing its road between Panhandle, in Carson County, and Washburn, and the construction of its road direct from Panhandle to Amarillo, leaving Washburn six miles off its line. It was alleged that in 1887 R. E. Montgomery was in possession of four sections of land, Nos.

62, 63, 98, and 99, which lay in such contiguity to each other as to substantially form a square, and a right of way was granted the Fort Worth & Denver Railway Company across said sections together with a depot ground about the center of the square, and also there was donated to the said railway company about 100 acres out of said square, the consideration being that the railway company would establish on said land its depot, which was done and the station called Washburn; that afterwards the Panhandle Railway Company was incorporated to build a railroad from a point at or near Washburn, in a northeasterly direction to Panhandle, the charter thereof providing that it would establish and maintain its principal offices at Washburn, that said railway company entered into an agreement with Montgomery by which in consideration of the grant of right of way and depot grounds, it agreed to forever maintain its road, depot and principal offices at Washburn; that the right of way and depot grounds were taken possession of, the road was constructed and the depot established and the same were used and occupied until the same was purchased by appellant under and by authority of an Act of the Twenty-sixth Legislature, in 1899. and the same was taken possession of by appellant and operated as a part of its line until about April 1908, when appellant wrongfully and wilfully took up and removed its tracks from Panhandle to Washburn, and ceased to operate that part of its line, and permanently abandoned and discontinued the same.  By the pleadings appellant was charged with knowledge of the contract of the Panhandle Railroad, but disregarded the rights of appellee which were obtained by his purchase on December 1, 1906, of all of the four sections of land owned at that time by Montgomery, together with all the covenants, rights, privileges and appurtenances belonging or appertaining to the same; that when Montgomery laid off and platted the town of Washburn he included about 600 acres, consisting of about 5000 lots and published a map and plat which showed the donations to the Panhandle Railway Company, and that it was replatted by appellee, who owned 1603 acres of land out of the four sections, in addition to 5388 lots as shown by the map of Washburn; that said lots were worth, prior to the removal of the railroad, $30 each and the acreage property $40 an acre, but by the removal the lots were reduced in value to $15 each and the acreage property to $20 an acre, the total depreciation being $112,970.

"Appellant answered by general and special demurrers, general denial and special pleas, which gave a history of the default of the Panhandle Railway Company in the payment of certain bonds, the foreclosure of a mortgage, a sale of the road and its properties and franchises to Edward Welder, and his sale on January 1, 1900, to appellant by virtue of the authority of an Act of March, 1899, of the Legislature of Texas. It was further answered that by an Act of the Legislature, of date March 26, 1907, appellant had been authorized to take up and abandon its track and road from Washburn to Panhandle, and a plea of limitations was also filed."

The Court of Civil Appeals having reversed the judgment of the

District Court and rendered judgment for the railway company, it will be the duty of this court to reverse that judgment if the testimony rendered by the plaintiff on that issue would be sufficient to sustain the judgment of the trial court. The rule is that the Court of Civil Appeals may reverse a judgment on the weight of the testimony but that court can not render judgment if the evidence when considered in the light most favorable to the party in whose favor the judgment is rendered would sustain the judgment of the trial court. In such case the Court of Civil Appeals must remand the case to the District Court.

In order to test the correctness of the judgment of the Court of Civil Appeals under the rules stated we will now state that portion of the evidence which is most favorable to the plaintiff in error, Logue.

R. E. Montgomery testified to the following facts: Montgomery swore that he donated depot grounds, right of way, about 150 acres, to the Fort Worth & Denver and the Panhandle roads, and "the consideration was the building, establishment and maintenance of both railways, with their depots and stations on my land, both companies taking possession of the land so donated and using it as they desired for railway purposes." He made a deed of the land donated to the Fort Worth & Denver road, but gave no deed to the Panhandle road. He further testified: "I was one of the incorporators of the Panhandle Railroad and a stockholder and director of the company, and its charter provided that its railway should be built over my land, its depot erected, located and maintained thereon, and that its principal office should be and remain there forever, and that was the understanding and agreement between us. I can't tell what officers I had this agreement with as to the establishment and maintenance of the general offices or the building of the road, or the establishment of its station and depot on my land, but think it was with the president, who, I think, was J. P. Smith, Morgan Jones and probably some of the other officers of the company named in the charter, but I do know that my agreement with them was that this road, with its depot, station, and principal place of business should remain on the land that I donated forever, and I would not have donated this land for any other purpose, except a permanent one."

This evidence was contradicted by the witnesses of the railroad company.

The charter of the Panhandle Railway Company contains this statement: "The principal business office of said corporation shall be and maintained at Washburn, in the County of Armstrong, in the State of Texas."

We find in the statement of facts a copy of the various Acts of the Legislature which authorized the purchase of the Panhandle Railway by the Southern Kansas Railway Company, the defendant in error. The law also authorized the Southern Kansas Railway Company to take up the track of the Panhandle Railway from Washburn to Panhandle. We also find the following provision in the said law: "The enactment of this law shall not preclude any person who may have a legal cause of

action against said Southern Kansas Railway Company for damages, if any, occasioned by reason of the taking up and destruction of said track from prosecuting said cause of action in the proper court having jurisdiction thereof."

The foregoing states all of the evidence that we find in the record favorable to the plaintiff in error, and upon that evidence we will examine his right to a reversal of a judgment of the Court of Civil Appeals.

For the discussion of the question of law before us we will assume, first, that the plaintiff in error is entitled to recover from the defendant company whatever Montgomery could have recovered under the facts of this case. Secondly, we will assume that Montgomery made a contract with one or more of the directors of the Panhandle Railway Company, to the effect that the depot and principal offices of the corporation should be permanently established at the town of Washburn, in consideration of the granting of the right of way and depot grounds mentioned in the opinion. We deem it unnecessary to copy into this opinion the statutory provisions which have already been either copied or so stated as to be understood.

Article 4367 of the Revised Statutes reads thus: "Every railroad company chartered by this State, or owning or operating any line of railway within this State, shall keep and maintain permanently its general offices within the State of Texas at the place named in its charter for the locating of its general offices; and, if no certain place is named in its charter where its general offices shall be located and maintained, then said railroad company shall keep and maintain general offices at such place within this State where it shall have contracted or agreed, or shall hereafter contract or agree, to locate its general office for a valuable consideration; and, if said railroad company has not contracted or agreed for a valuable consideration to maintain its general office at any certain place within this State, then such general offices shall be located and maintained at such place on its line in this State as said railroad companies may designate to be on its line of railway. And such railroads shall keep and maintain their machine shops and roundhouses, or either, at such place or places as they may have contracted to keep them for a valuable consideration received." That article was construed in Kansas City, Mexico & Orient Railway Company v. City of Sweetwater, 104 Texas, 324, 137 S. W., 1118. Assuming that there was a contract made between Montgomery and the directors of the railroad company for the location and maintenance of the depot, offices, etc., in Washburn, then the case would come within the terms of that article, and in that case Logue would be entitled to all of the benefits of the contract made by Montgomery.

The right of the plaintiff in error in this case depends upon the two following articles of the statute:

"Art. 6445. All the corporate powers of every railroad corporation shall be vested in and be exercised by its legally constituted board of directors."

"Art. 6446. There shall be a president of the corporation, who shall be chosen from and by the board of directors, and such other subordinate officers as the corporation by its by-laws may designate, who may be elected or appointed, and shall perform such duties and be required to give such security for the faithful performance thereof as the corporation, by its by-laws, shall require."

In terms which can not be misunderstood the statute commits all of the powers of the corporation to a board of directors and designates the president as an officer who has power from the board of directors to see that the orders or the directions of the directors are executed. Such president could not make such contract as is claimed in this case.

In the case of Kansas City, Mexico & Orient Railway Company v. City of Sweetwater, above cited, the question that is now before the court was presented, except that the claim was more strongly supported by evidence in that case than in this. In that case this court said:

"It will be observed that the statute places all authority of the corporation in the board of directors, and the power of the officers of the company depends upon the action of the board of directors in conferring authority upon them. The fact that McCaulley was vice president of the railroad company did not authorize him to make the contract in question, that power could only be derived from the board of directors, yet, we must keep in mind that it is not necessary that there should be express authority given, but whatever may be sufficient to justify the conclusion that the directors, that is, the authorized body of the railroad company, had conferred this authority upon McCaulley, or had, knowing of his having exercised it, approved or ratified it in any way would be sufficient. Missouri, K. & T. Ry. Co. v. Faulkner, 88 Texas, 651, 32 S. W., 883. It is claimed that under the by-laws of the corporation the vice president was authorized, in the absence of the president, to exercise such authority as was given to the president, but there has been nothing adduced so far as we are able to find which tends to show that the board of directors ever conferred such authority upon the president himself. There is no direct evidence of the giving of authority by any officer authorized to do so to McCaulley to make this contract, and we must now determine from the evidence whether there was such approval and ratification as will bind the company. Gulf, C. & S. F. Ry. Co. v. Jones, 82 Texas, 156, 17 S. W., 534. McCaulley could not ratify his own acts. A binding ratification must be based upon the acts of those who could have conferred the power to do the act and must rest upon a knowledge of the facts. The ordinance granting consent of the city did not express the consideration that the company should locate the machine shops, roundhouse and offices at Sweetwater, therefore the use of the streets under that ordinance did not constitute a ratification of that which was not expressed in the ordinance, unless it is shown to have been known to the officers whose acts are relied upon as a ratification."

We could add no force to the conclusion there announced by a repetition of the argument made in that case. However, we will show the

contrast between the facts of the two cases and the conclusion that the decision in the case must control this, will necessarily follow.   In that case it was assumed that the president or vice president of the railroad company made a contract with Sweetwater by which it was agreed that in consideration the city would give the railroad company permission to construct its lines upon a certain street, and operate its railroad upon that street, the railroad corporation agreed that it would construct its shops and maintain them at that place.   The railroad company subsequently sought to remove the shops to San Angelo, whereupon an injunction was sued out and a judgment was rendered denying it the right to do so.   The case was brought by writ of error to this court, and the issue of law was distinct and clear as to whether the railroad company was bound by the contract of its president without ratification of the board of directors.

This court held that the president had no authority to make such a contract except under the direction of the board of directors, and that the railroad company was not bound by his action unless it was adopted and approved by the board of directors, or that the board of directors, knowing of this contract and its terms, ratified the said action, or that with such knowledge and the use of the street by the railroad company the board by its action thereafter adopted such agreement made by its president.   In that case the use of the street was open to everybody and the trains operated upon it with the shop nearby, but there was no knowledge of the contract or that the terms of the contract had been brought home to the board of directors.   The court said: "We are of opinion that the railroad company is not bound by the alleged contract, that the use of the streets was not accepted as a consideration for the location of the offices, machine shops and roundhouse at said city, and the city is not entitled to the injunction prayed for."

From the occupancy of the land under deed from Montgomery no presumption could arise that a private agreement like this existed.   The purchasing corporation was charged with notice of such burden or condition as attached by law.   The writer would be unable to make this matter more satisfactory than is done by the quotation above.   We simply add that the case before us has no facts upon which to rest its claim of a contract with the directors of the Panhandle Railway Company, without which no right was acquired by Montgomery against that company,—therefore, Logue has acquired no right against the defendant in error.

The judgment of the Court of Civil Appeals correctly administers the law of the case, and it is therefore affirmed.

*Affirmed.*