Arvel C. CURTIS et al., Appellants,

v.

PIPELIFE CORPORATION, Appellee.

No. 3793.

Court of Civil Appeals of Texas.

Eastland.

Sept. 13, 1963.

Rehearing Denied Oct. 4, 1963.

Biggers, Baker, Lloyd & Carver, Dallas, for appellants.

Thompson, Knight, Wright & Simmons, Dallas, for appellee.

COLLINGS, Justice.

Appeal from the 160th Judicial District Court of Dallas County.

Pipelife Corporation brought suit against Arvel C. Curtis, I. C. S. Corporation and Industrial Coating Service, a partnership, seeking a temporary injunction, a permanent injunction and damages. The court granted plaintiff's request for a temporary injunction as prayed and defendants have appealed.

Appellant, Arvel C. Curtis, is also a partner in Industrial Coating Service and the chief stockholder and executive officer of I. C. S. Corporation. He is the inventor of certain devices for the internal cleaning and coating of pipelines which were assigned by him to appellee Pipelife Corporation. It was alleged in appellee's pleadings as plaintiff that Curtis at the time of the assignment agreed not to compete with Pipelife Corporation within the field of work defined as cleaning and coating of pipelines. It was alleged that such non-competitive agreement was contained in two certain contracts dated, respectively, December 28, 1954, and March 1, 1956. It was further alleged by appellee that Curtis and the other defendants were engaging in such work in violation of the non-competitive agreement and that Pipelife Corporation would suffer irreparable harm and damage unless all of the defendants were enjoined from engaging in such work, in that, defendants were holding themselves out as being ready, willing and able to do such work and they thereby frustrated the efforts of appellee to interest third parties in investing in the business activities of appellee in connection with such cleaning and coating process.

Appellants, as defendants in the trial court, alleged that Curtis had secured the consent of appellee Pipelife Corporation to engage in such work by virtue of oral authority granted by the president of appellee corporation during the year 1960, by virtue of authority contained in a letter from the president of appellee corporation addressed to Curtis in 1960 and by virtue of a formal written license agreement of Pipelife Corporation as licensor to I. C. S. Corporation, as licensee, dated July 15, 1961. Appellants further alleged that Pipelife Corporation had ratified engaging in such work by appellants and that appellee was estopped to question the validity of the licenses, or the rights of appellants to engage in such work.

By supplemental petition appellee, Pipelife Corporation, alleged that the licenses had not been approved by its board of directors and that a by-law of such corporation required unanimous approval of the board of directors for granting of licenses. Appellee further alleged that the formal license agreement dated July 15, 1961, was secured by fraud on the part of Curtis.

The evidence is undisputed that Curtis is the inventor of the patented process known as the "Pipelife Process", for cleansing and coating of pipelines internally in place and being applied either before or after the pipeline has been put in use for carrying oil, gas, water or other liquids. Such patents were granted to Curtis in 1947. The patents were assigned by Curtis to Pipelife Inc., a Texas corporation. In 1954 Pipecote Service Company, Inc., acquired all the capital stock of Pipelife Inc. At the same time a written license agreement was entered into between Curtis and Pipecote Service Company, Inc., by virtue of which Curtis was granted a royalty on all work performed under his patented inventions and as a part of the agreement Curtis agreed that he would not compete with Pipecote Service Company, Inc., within the field of work of cleaning and coating pipelines internally in place. Pipecote Service Company, Inc., apparently became Pipelife Corporation or, at least, operates as such. On March 1, 1956, a written agreement was entered into between Curtis and Pipelife Corporation, the plaintiff in this suit, which, among other things, again provided for a royalty to Curtis on his patented inventions

and again provided a non-competitive agreement reading as follows:

"During the term of all patents and patents rights within the field of work, Party of the First Part agrees that he will never compete with Party of the Second Part within the field of work either as proprietor, partner, stockholder, employee, agent, or in any other capacity, except with the consent of Pipelife."

Curtis testified that prior to July 31, 1960, Patrick H. Downing, President of Pipelife Corporation orally gave Curtis consent and authority to operate as a licensee of Pipelife Corporation. The evidence shows a letter dated July 31, 1960, reading as follows:

"Industrial Coating Service
"Dallas, Texas
"Att: Mr. A. C. Curtis
"Dear Arville:
"As President of Pipelife Corporation, you have authority from me to use the Pipelife method of coating pipe internal in place as long as you pay to Pipelife Corporation the 5% royalty that is required by coating service companies working under contracts with Pipelife.
"I am in no position to give you a non-exclusive. This will have to be passed on by the Board. However, I will be glad to present your wishes at the next Board Meeting and see that it is voted on.
"I feel like someone has to keep this from completely getting out of circulation at this time and until we can get something worked out where we can put Pipelife in a position to work, I see no reason why you should not continue doing this type of work.
                    "Very truly yours,
                    "/s/ Patrick H. Downing
                    "Patrick H. Downing
"PHD: cr"

The evidence also shows checks from Industrial Coating Service payable to Pipelife Corporation for royalty for work done by Industrial Coating Service using the "Pipelife Process," both before and after the above letter of July 31, 1960. Appellee, Pipelife Corporation does not question the existence or validity of the above letter of authority.

■ In appellants' first and second points it is contended, in effect, that the court abused its discretion in granting the temporary injunction because, appellants contend, (1) the oral authority from the President of Pipelife Corporation to Curtis to engage in the cleaning and coating of pipelines constituted the consent for Curtis and associates to so engage, and as a licensee of Pipelife Corporation and (2) the letter of July 31, 1960, from Pipelife Corporation by its President, addressed to Industrial Coating Service constituted authority for Curtis and associates to engage in cleaning and coating pipelines, and consent to Curtis and associates to so engage as a licensee of Pipelife Corporation. We cannot agree with appellants' contentions in their first and second points and they are overruled. The effect of the letter as above set out was simply an indication of permission to Curtis to continue doing the type of work in question until something could be "worked out where we can put Pipelife in a position to work." The letter stated that the writer as President of appellee corporation was not in a position to "give you a non-exclusive. This will have to be passed on by the Board." The evidence shows that the Board of Directors would have to approve any non-exclusive license, and that Curtis had knowledge of this fact. The effect of the letter and of the prior oral agreement was simply to grant to Curtis permission to do such work, subject to the right of appellee Pipelife Corporation, to, at any time, withdraw such permission.

It is contended in appellants' third point that the court abused its discretion in granting the temporary injunction because of a written license agreement dated July 15, 1961. It is undisputed that a formal

written license agreement purporting to be from Pipelife Corporation, as licensor, to I. C. S. Corporation, as licensee, dated July 15, 1961, was signed by the President of Pipelife Corporation, attested by the Secretary of the corporation and signed by four of the five directors of the corporation, including the President, Mr. Downing. The license agreement was not signed by the fifth and remaining director of Pipelife Corporation. The agreement was signed on behalf of I. C. S. Corporation by A. C. Curtis. The agreement provided, in substance, that the I. C. S. Corporation be granted a license for the entire life of the patents in question, and any improvements thereon, to engage in the cleaning and coating of pipelines internally in place within all of the United States and Canada, and provided for a royalty to be paid by I. C. S. Corporation to Pipelife.

■ Appellee, Pipelife Corporation contends that the above described license agreement dated July 15, 1961, is invalid. Appellee urges that the license was not granted with the unanimous consent of all of the directors of Pipelife Corporation; and that on June 11, 1960, appellee's Board of Directors amended their by-laws so as to require that any license granted could be granted only upon the unanimous consent of the directors; also that such license was not granted at a duly assembled meeting of the Board of Directors of Pipelife Corporation; and that Mr. Curtis secured the signature of the President and directors who signed the license agreement by misrepresentation. Appellee, Pipelife Corporation is a Delaware Corporation. Sec. 141 of the Delaware General Corporation Law, 8 Del.C. § 141, provides that the business of every corporation shall be managed by a board of directors. The general rule is that directors of a corporation must sit as a board in order to constitute valid corporate action. In 19 C.J.S. Corporations § 744, at page 84, it is stated that:

"In general a board of directors may exercise its powers only as a body at a meeting duly assembled and conducted."

The evidence shows that the license relied upon by appellant was not granted at a duly assembled meeting of the Board of Directors of appellee corporation. The action of a majority of the individual members of the Board was therefore ineffective to bind the corporation. The evidence shows also that a resolution was passed by the board of directors of Pipelife on June 11, 1960, prior to the license agreement dated July 15, 1961, which provided that no license could be granted by Pipelife unless there was unanimous consent of the board of directors. The evidence shows that the board of directors did not unanimously agree to approve the purported license agreement dated July 15, 1961. Subsection (g) of Section 141 of the Delaware General Corporation Law provides that any action required to be taken at a meeting of the board of directors could be taken without a meeting if prior to such action a written consent is signed by all members of the board and such written consent is filed with the minutes of the board. No such consent was shown nor was the license agreement participated in by all the members of the Board. The purported granting of the license was therefore ineffective to bind the corporation. It was contrary to the by-laws of the corporation and did not comply with the Delaware General Corporation Law.

There is also evidence to the effect that because Pipelife Corporation found itself in a precarious financial condition, it became necessary to secure additional financing; that in the early part of 1961, Bob Williamson, one of appellee's leading stockholders, contacted Atlantic Refining Company and interested some of its officials in Pipelife; that initial proposals were that Atlantic Refining Company might contribute as much as $250,000.00 in capital to Pipelife. Appellant, Curtis, was also attempting to acquire a non-exclusive license and other advantages by making a capital contribution to Pipelife Corporation. The evidence indicates that a meeting of the Board of

Directors of Pipelife Corporation was held in Austin, Texas, on May 24, 1961, at which time two proposals were presented to the Board. One of the proposals was by appellant Curtis and the other by Bob Williamson. Curtis proposed that he should receive a non-exclusive license under certain conditions but no action was taken by the Board of Directors at such meeting concerning either proposal. An informal meeting of the directors was held in Dallas on June 16, 1961, at which time Curtis and Williamson again presented written proposals to appellee Pipelife Corporation. It was provided in the proposal by Curtis that he should receive a non-exclusive license under certain conditions. There was evidence to the effect that on this same day Curtis approached Downing and told him that he was negotiating several contracts and that some of the contracts provided for monies to be borrowed from the Small Business Administration; that to get this money, he, Curtis, needed evidence that he had a license. Curtis thereupon dictated a letter dated June 16, 1961, which was signed by Downing, the President of appellee corporation stating that the Board of Directors had granted such a license to the I. C. S. Corporation. There is no evidence that any other directors of appellee corporation knew of or approved this letter at that time. Curtis, thereafter, approached Downing and asked that the license be prepared. Downing told Curtis to see Howard Marsh, one of the directors of appellee corporation, who was an attorney, and have him prepare the license. Curtis stated that he endeavored to contact Marsh but was unable to do so and that he had his own attorney prepare the license. Curtis then took the license to Downing and told him that he, Curtis, had been to Philadelphia and had been advised by a representative at Atlantic Refining Company that he, Curtis, would have to have a non-exclusive license before any money could be obtained from Atlantic. Downing testified that, based upon this representation, he signed the license as one of the directors of appellee corporation for the use of Curtis in securing such

financing and prevailed upon some of the other directors to do likewise. Another one of the directors also testified that Curtis told him that the license agreement was necessary to the completion of the Atlantic deal. There is further evidence to the effect that Atlantic Refining Company was and still is interested in financing Pipelife Corporation, but only if the purported license agreement with Curtis is not in effect.

The evidence in our opinion raises a fact issue on the question as to whether Curtis used fraudulent means to obtain the signatures of the directors of appellee corporation to the license agreement. In support of the judgment it must be presumed that the court so found. For all the reasons above stated the purported granting of the license in question was ineffective.

We also overrule appellants' points urging that Pipelife Corporation ratified "all the license agreements" and is estopped to question same. The question of ratification is a mixed question of law and fact. A showing of consent to be bound by a contract or the showing of acts which clearly evidence such an intent may constitute ratification. However, "acts which are a mere continuance of the former transaction do not amount to a ratification." 10 Tex.Jur. page 109. The action and conduct of appellee Pipelife Corporation as shown by the evidence and relied upon by Curtis do not show ratification and estoppel. The acceptance of the royalty checks by appellee were merely a continuance of the former oral and letter agreement of Curtis and his associates to use the patented process in the internal cleaning and coating of pipelines on a temporary basis. Appellant particularly urges in this connection the fact that appellee Pipelife Corporation took no action until this suit was filed in November, 1961. There is ample evidence, however, that during June, July and August of 1961, all parties to this suit were working together to secure financing from Atlantic Financing Company. Curtis and Williamson were in conflict,

each urging different plans and proposals to accomplish the desired aim, but both were seeking to help appellee Pipelife Corporation by securing financial backing from Atlantic. As heretofore pointed out, there was evidence to the effect that the purported license relied upon by Curtis was signed by a majority of the individual directors of appellee corporation for the sole purpose of assisting Curtis in his efforts to secure financial help for the corporation. The evidence does not show and certainly does not conclusively show ratification and estoppel.

For the reasons stated we hold that the trial court was not guilty of an abuse of discretion and that its action in granting the temporary injunction was amply supported by the evidence.

The judgment of the trial court is affirmed.