**AMERICAN BANK & TRUST COMPANY, Appellant,**

v.

**Bruce B. FREEMAN et al., Appellees.**

**No. 7953.**

Court of Civil Appeals of Texas, Beaumont.

Nov. 10, 1977.

Rehearing Denied Dec. 29, 1977.

A. J. Watkins, Houston, for appellant.

Dale Friend, Houston, Gerald J. Creighton, J. Ritchie Field, Conroe, for appellees.

DIES, Chief Justice.

Plaintiff below, Bruce B. Freeman, was indebted to a Conroe bank for $125,000 and sought a means to pay off the note. R. D. Philpot, Chairman of the Board of American Bank & Trust Company of Shreveport, Louisiana, suggested plaintiff apply for a loan at American. At subsequent conversations, Philpot agreed to sell plaintiff 12,500 shares of his stock in American Bank and see that he was elected to its Board.

On September 20, 1971, plaintiff went to Shreveport, signed a note for $275,000, paid the Conroe bank the $125,000 debt, and gave Philpot a check for $149,000, which the latter deposited in his personal account at American Bank. This $149,000 was for the stock Philpot promised and $24,000 to be invested for plaintiff.

To secure the $275,000 loan from American Bank, plaintiff gave a deed of trust on fifty acres of land (a feed lot) near Conroe and induced his mother, Julia, to assign the Bank two notes from Brown & Root, Inc., each in the principal sum of $33,333.33.

Philpot went bankrupt, was unable to get plaintiff on the Board of American Bank, and did not transfer the stock to plaintiff. American Bank demanded their money from plaintiff and, after not receiving it, applied his mother's (Julia's) notes to the loan. The feed lot was sold at a trustee's sale.

Plaintiff brought this suit against defendant Bank alleging fraud in the inducement. He (plaintiff) contended Bank through its Board Chairman, Philpot, induced plaintiff to mortgage his fifty acres of land to Bank, and secured his mother's (Julia's) assignment of the Brown & Root notes, on the assurance he (plaintiff) could purchase 12,500 shares of Bank stock owned by Philpot, and that he (plaintiff) would be placed on the Board of Directors of Bank. Plaintiff alleged that these assurances were made with no intention of being fulfilled. Plaintiff's mother, Julia Freeman, intervened as a plaintiff, adopting and incorporating these allegations.

Trial was to a jury, which found among other things that Philpot was acting within his scope and authority as an agent for the Bank; that he promised plaintiff the 12,500 shares of stock; that the promise was made as Bank's agent; that his breached promises caused Julia loss of the Brown & Root notes and plaintiff $125,000; that Philpot defrauded both Julia and plaintiff; and that each should receive $10,000 as punitive damages.

Judgment was rendered that Julia recover the value of the two Brown & Root notes plus $10,000 (punitive damages) against defendant Bank. Plaintiff Bruce Freeman was given credit for the $125,000 (purchase stock money), $10,000 punitive damages, and judgment given Bank against plaintiff Bruce Freeman for the balance owed. It is

from this judgment, Bank perfects this appeal.

■ Mrs. Julia Freeman has filed a brief with us, but plaintiff Bruce Freeman has not. We, therefore, are authorized to accept as correct as to Bruce the statements contained in Bank's (appellant's) brief as to the facts and the record. *Crawford v. Modos*, 465 S.W.2d 220, 222 (Tex.Civ.App.—Beaumont 1971, writ dism'd), and the many cases cited therein.

Bank's first point is there was no evidence, or in the alternative insufficient evidence, to support the jury's finding that Philpot was the Bank's agent.

Bank cites us no authority to support this contention. The two authorities cited in Julia Freeman's (appellee's) brief do not seem in point. This is in no criticism of the attorneys for the parties, for we have also been unable to find pointed authority.

However, the following authorities seem to us analogous and persuading.

■ The board of directors are by statute the managers of a Texas corporation. *Tex.Rev.Civ.Stat.Ann. art. 2.31 (1956)*. Individual action by a director ordinarily cannot bind the corporation. *Nicholstone City Co. v. Smalley*, 21 Tex.Civ.App. 210, 51 S.W. 527, 529 (1899, no writ). In *Southern Kansas Ry. Co. of Texas v. Logue*, 139 S.W. 11, 14 [Tex.Civ.App.—San Antonio 1911, affirmed, 106 Tex. 445, 167 S.W. 805 (1914)], we find:

". . . no corporate power can be exercised by any one except the board of directors or by some officer or agent specially empowered by the board of directors to act in their name, place and stead. The president or vice president or one or more of the directors could not bind the corporation in the exercise of its corporate powers by virtue of the office or position held, but there must be action of the board of directors of the corporation either in performing the act or authorizing some one else to perform it. It may be that such authority may at times be inferred from the circumstances surrounding the acts, and undoubtedly the unauthorized act of some officer or agent might be ratified or confirmed by the board of directors."

■ The general rule is that a board of directors may exercise its powers only as a body at a meeting duly assembled. *Curtis v. Pipelife Corporation*, 370 S.W.2d 764, 767 (Tex.Civ.App.—Eastland 1963, no writ); *Wichita Falls Electric Co. v. Huey*, 246 S.W. 692, 695 (Tex.Civ.App.—Amarillo 1923, no writ). See *A. J. Anderson Co. v. Kinsolving*, 262 S.W. 150, 151 (Tex.Civ.App.—San Antonio 1924, writ dism'd). In absence of specific authority from the board of directors, the president of a corporation has no authority to contract for the corporation. *Standard Underground Cable Co. v. Southern Ind. Tel. Co.*, 134 S.W. 429, 433 (Tex. Civ.App.—San Antonio 1911, writ ref'd).

■ While this authority may be express or apparent, the burden of proof is upon him who alleges authority; in the absence of proof no presumption of authority will be indulged. *First Nat. Bank v. Slaton Independent School Dist.*, 58 S.W.2d 870, 875 (Tex.Civ.App.—Amarillo 1933, writ dism'd).

Here, of course, Philpot was Chairman of the Board and not President. However, his authority would certainly be no greater than the President of the Bank.

■ We have no evidence that the Board of Directors of American Bank ever authorized expressly or impliedly Philpot to contract for the sale of his personal stock in the Bank to Bruce Freeman, or to see that Bruce was put on Bank's Board of Directors. So far as the record reveals, Bruce's decision to borrow from American Bank more money than he owed the Conroe Bank so that he could buy Philpot's stock was a private matter between him and Philpot. The record does not reveal that the Board of Directors ever gave Philpot any authority, express, implied, or apparent, to agree that Bruce would be put on the Board of Directors. Philpot had pledged his stock to another Louisiana institution in an effort to shore up his crumbling business empire and could not have sold it to Bruce anyway.

■ His mother, Julia Freeman, had no conversations with Philpot or any other officer or director of the Bank, and, therefore, assigned her Brown & Root notes to American Bank entirely on the representations and entreaties of her son.

■ Both Bruce Freeman and Julia Freeman have been sorely abused, but it is not by American Bank. We hold that Philpot was not acting within his scope of authority for American Bank in agreeing to sell 12,500 shares of his stock to Bruce Freeman, or promising a seat on the Board of Directors to him. Appellant's point of error is sustained, and it is ordered, adjudged, and decreed that appellees Bruce and Julia Freeman recover nothing of and from appellant American Bank & Trust Company of Shreveport, Louisiana.

REVERSED and RENDERED.