ACCENT ENERGY CORPORATION and
Gerald T. Waters, Appellants,

v.

Billy M. GILLMAN and Robert
H. Windle, Appellees.

No. 07–90–0211–CV.

Court of Appeals of Texas,
Amarillo.

Jan. 23, 1992.

Rehearing Overruled Feb. 24, 1992.

Stephen F. Cross, Borger, for appellants.

Sheets & Holcomb, Jody G. Sheets, Culton, Morgan, Britain & White, Wyatt L. Brooks, Amarillo, for appellees.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

REYNOLDS, Chief Justice.

This appeal was perfected from a judgment rendered on a jury's verdict in favor of two minority shareholders in their deriv-

ative action grounded on the failure of the majority stockholder and secretary of the corporation to fully disclose a corporate opportunity. Assuming *ad interim* that, as the jury found, the majority shareholder-secretary failed to fully disclose a corporate investment opportunity to the corporation, our initial inquiries are whether he was dutifully required to disclose the opportunity to the minority shareholders, and whether those shareholders may maintain their action in the county where only one of the minority stockholders resided. Answering in the negative, we will reverse and remand for a transfer of the cause.

Accent Energy Corporation's minority stockholders Billy M. Gillman, a resident of Potter County, and Robert H. Windle, a resident of Hutchinson County, initiated this action in a district court of Hutchinson County. As defendants, they named Accent, a private corporation with its principal place of business in Dallas County, Gerald T. Waters, a Dallas County resident who was the majority stockholder and secretary of Accent, and Clyde T. Johnson, the president and sole director of Accent, who resided in Dallas County. The action was founded on (1) the failure of Waters and Johnson to fully disclose corporate opportunities, and (2) Waters' unfair usurpation of a corporate opportunity, which arose out of the following chain of events.

In 1981, Waters contributed cash and property, the interests he had in several oil and gas leases as a former shareholder of Intrepid Oil and Gas Company, as consideration for four million shares of stock in a corporation to be organized under the name "Accent Energy Corp." The articles of incorporation provided that the registered office of the corporation was in Dallas County, and Clyde T. Johnson would serve as the sole director, and registered agent, of the corporation. Accent began its corporate existence on 30 November 1981. Tex. Bus.Corp.Act Ann. art. 3.04 (Vernon 1980). Johnson and Waters served respectively as president and secretary of the corporation.

Traveling by air from Dallas to Amarillo in 1983 to attend Gillman's Fourth-of-July party in Borger, Hutchinson County, Wa-ters discovered that Mike McLaughlin, a personal acquaintance, was also attending Gillman's party. On the airplane, McLaughlin gave Waters an offering circular, which solicited prospective investors in a well proposal in Jefferson County, Oklahoma. Waters did not mention the solicitation to Gillman or Windle during the party or during subsequent visits to Borger.

Later, after discussing the investment with Johnson, Waters personally purchased an interest in the proposal, the "Cornish Joint Venture Program," with $32,632 of his own funds. Drilling commenced in late October or early November of 1983, and the initial well, the "Pogue # 1," was completed in January, 1984. The well was at that time, according to McLaughlin, the "biggest well to hit Oklahoma in ten years." In mid-December of 1983, Waters addressed a Christmas card to Gillman in Amarillo on which he had written the flow rate of the Oklahoma well.

In December, 1984, a special shareholders meeting was held in Dallas to consider the dissolution of Accent. At that time, Waters owned 78.01% of the shares of stock of Accent, Johnson owned 1.79% of the shares individually and held 7.23% of the shares as trustee, and Gillman and Windle each owned 4.46% of the shares. Gillman and Windle opposed voluntary dissolution.

Receiving notice of the annual shareholders meeting scheduled for 10 o'clock a.m. on 30 March 1985, Gillman arrived at five minutes past, and was informed the meeting had already concluded. By letter released two weeks later, Gillman and the other shareholders were informed that the corporation was being dissolved pursuant to a corporate resolution adopted at the annual meeting, and the "Daniels," "Klutts," and "Edwards" leases, as corporate assets, would be collectively sold on an "open bid" basis.

On 16 May 1985, Gillman and Windle, satisfying the prerequisites of article 5.14, Texas Business Corporation Act Annotated (Vernon 1980), initiated their derivative action against Accent, Waters, and Johnson in Hutchinson County. They also sought,

and obtained, both a temporary restraining order and a temporary injunction to prevent Waters and Johnson from transferring the corporate properties and proceeding with the dissolution.

Subsequently, by court order, the remaining minority shareholders, none of whom resided in Hutchinson County nor owned more than 3.57% of the shares, were added as defendants to the suit. These defendants answered, denied liability, and requested recovery of expenses and costs.

Before answering, Accent, Waters, and Johnson, filed motions, with supporting affidavits, to transfer the cause to Dallas County, the residence of each, in which they specifically denied that venue was proper in Hutchinson County. After the issue was joined, the trial court denied the motions.

The cause was tried before a jury, which found that the disclosure Waters made to Johnson before Waters' investment in the Oklahoma lease failed to be reasonably calculated to give full disclosure to Accent of an investment opportunity, and answered other submitted questions favorably to Gillman and Windle. The trial court rendered judgment on the jury's verdict. By its judgment, the court decreed that: (1) Waters pay damages in the amount of $372,-000, pre-judgment interest in the amount of $286,732.87, and expenses and costs in the amount of $22,624.89, to the corporation; (2) Accent pay expenses in the amount of $20,124.59 to Gillman; pay expenses in the amount of $2,500 to Windle; pay attorney's fees in the amount of $5,000 to Gillman and Windle; and (3) Accent distribute, pro rata, all proceeds recovered from Waters to the shareholders. Johnson was absolved of liability, and the remaining minority shareholders were denied recovery from Gillman and Windle.

After their motions for judgment notwithstanding the verdict, for new trial, and for reformation of the judgment were denied by the trial court, Accent and Waters perfected this appeal. With respect to Johnson, against whom Gillman and Windle do not seek appellate relief, and the other shareholders who did not file cross-points

in this appeal, the judgment became final. *Turner, Collie & Braden v. Brookhollow, Inc.*, 642 S.W.2d 160, 166 (Tex.1982).

With the last of their nine points of error, Accent and Waters contend the court erred in overruling their motions to transfer venue of the cause. As their immediate reply, Gillman and Windle assert that since Accent and Waters had a duty to secure a hearing on their venue motions and failed to do so for nearly three years, their failure is an adequate cause for denial of the motions. Tex.R.Civ.P. 87(1); *Whitworth v. Kuhn*, 734 S.W.2d 108, 111 (Tex.App.—Austin 1987, no writ).

Further, Gillman and Windle represent that since it is undisputed Johnson was told of the investment, "the crux of [their] case was necessarily dependent on the issue of whether the independent minority shareholders should have also been informed." They note that the first opportunity Waters had of so informing them occurred in Hutchinson County, and then they conclude that because the court upheld the jury's determination that adequate disclosure was not made, the determination is conclusive in favor of the court's venue ruling. We are not persuaded that either reason is, under this record, adequate cause for denying the motions.

■ At the outset, we agree that Accent and Waters had the burden to secure a hearing on their motions to transfer venue. Tex.R.Civ.P. 87(1). The motions to transfer venue were filed on 29 May 1985 and a hearing was set, but on 25 July 1985, Gillman and Windle moved for a continuance of the hearing to complete discovery on matters relevant to venue, which they alleged could not be completed prior to the date of the venue hearing. They also requested a venue hearing not be set until at least 35 days after full discovery. Five days later, on 30 July 1985, Accent and Waters requested a venue hearing as soon as possible.

Thereafter, on 26 August 1985, Gillman and Waters filed their response to the motions, and on the following day filed their first supplemental petition. Thereafter, on 19 February 1988 and 19 August 1988, they

respectively filed their first and second amended original petitions. On 23 August 1988, the court signed an order denying the transfer of venue.

The case of *Whitworth v. Kuhn*, upon which Gillman and Windle rely for a waiver of the venue motions, is inapposite. There, Whitworth, after filing his motion to transfer, waited approximately one year before requesting a hearing. Here, a hearing was regularly set on the motions to transfer, but before the venue hearing, Gillman and Windle secured a continuance in order to conduct discovery. Tex.R.Civ.P. 88. Then, Accent, Waters, and Johnson moved in writing for a hearing as soon as possible. Gillman and Windle continued to file amended pleadings, and the court was required to consider their last filed amended pleading before determining the issue of venue. *Moriarty v. Williams*, 752 S.W.2d 610, 611–12 (Tex.App.—El Paso 1988, writ denied). The court's order reflects that the court heard evidence and arguments of counsel before making its venue ruling. Under these circumstances, a waiver did not result from the delay in hearing the venue motions.

■ In considering Accent's contention that it was entitled to be sued as a private corporation in Dallas County where its principal place of business was located, it must be noticed that:

A suit against a private corporation ... may be brought in the county in which its principal office is situated, in the county in which all or part of the cause of action arose, or in the county where the plaintiff resided when all or a part of the cause of action arose, provided the corporation ... has an agency or representative in the county....

Tex.Civ.Prac. & Rem.Code Ann. § 15.036 (Vernon Supp.1992). Although Gillman and Windle named Accent as a defendant, they pleaded their derivative action was brought on behalf of themselves and all shareholders similarly situated and in the right of Accent. They requested they recover damages "for the benefit of the Corporation" against Waters and Johnson, who were also requested to be held ac-

countable to Accent in other matters. In brief, Gillman and Windle pleaded a cause of action on behalf of Accent, not against it.

A similar suit was brought in *Morgan v. Box*, 449 S.W.2d 499, (Tex.Civ.App.—Dallas 1969, no writ). In addressing the question of venue in the county where all or a part of the cause of action arose with respect to a private corporation, the *Morgan* court said it is essential that the cause of action be asserted *against* the corporation. Then, the court quoted language from one of its earlier decisions to reiterate its holding that when the derivative action is for the benefit of the corporation, the corporation is an actual party plaintiff, and its designation as a defendant does not give the plaintiff a right to fix the venue in the county of his residence as against the corporation residing in another county. *Id.* at 506.

The *Morgan* holding is applicable and controlling here. Since Gillman and Windle initiated this derivative action on behalf of Accent, it follows that venue may not be fixed in Hutchinson County against Accent and Waters on the authority of section 15.036, *supra*. Our critical inquiry at this point, then, becomes whether the trial court correctly denied the motion of Waters, the real party defendant, to transfer venue to Dallas County.

The general venue statute provides that all lawsuits against a natural person-defendant shall be brought in the county in which all or part of the cause of action accrued or in the county of the defendant's residence. Tex.Civ.Prac. & Rem.Code Ann. § 15.001 (Vernon 1986). Thus, Waters was entitled to be sued in Dallas County, his county of residence, unless all or part of the Gillman–Windle cause of action accrued in Hutchinson County.

The essence of their cause of action, Gillman and Windle assert, is that albeit Johnson was told of the investment opportunity in the Pogue well, the opportunity was not adequately disclosed because Waters did not tell them about it in Hutchinson County, where he had the first opportunity to do so. Then, the crux of their cause of action is, as they state, whether the independent

minority shareholders should also have been informed. They were entitled to be adequately informed, they argue, particularly since Johnson was Waters' pawn and the disclosure to Johnson was, in effect, no disclosure at all. We are not persuaded to the viewpoint that Gillman and Windle were entitled to be informed in Hutchinson County of the corporate opportunity.

■ So far as the appellate record reflects, Accent was formed under the Texas Business Corporation Act (Vernon 1980; Vernon Supp.1992) as an ordinary private corporation operating under the direction of a board of directors, article 2.31(A), not as a close corporation whose business may be managed by the shareholders. *See* articles 12.31–12.39. We agree, as citations throughout the brief of Gillman and Windle teach, that officers and directors of an ordinary private corporation are fiduciaries, whose responsibility includes making a full disclosure of material facts within their knowledge relating to the corporation's business, *Imperial Group (Texas), Inc. v. Scholnick*, 709 S.W.2d 358, 363 (Tex.App.—Tyler 1986, writ ref'd n.r.e.), as well as the dedication of uncorrupted business judgment for the sole benefit of the corporation. *International Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 576–77 (Tex. 1963). However, neither of these precepts nor any provision of the Texas Business Corporation Act empowers the shareholders, either individually or collectively, to participate in, or to control, the general management of the business and affairs of the corporation entrusted to the board of directors. *Southern Kansas Ry. Co. of Texas v. Logue*, 139 S.W. 11, 14 (Tex.Civ. App.—San Antonio 1911), *aff'd*, 106 Tex. 445, 167 S.W. 805 (1914). As a consequence, corporate officers and directors are not duty bound to disclose a corporate investment opportunity to the minority shareholders; therefore, Waters was not required to disclose the Pogue well investment opportunity to Gillman and Windle.

■ Although Gillman and Windle charge Waters with the unfair usurpation of a corporate opportunity, they do not contend the usurpation occurred in Hutch-inson County, and rightly so. The record reveals that Waters accepted the Pogue well investment opportunity in Dallas County, where he received the income from his investment. Thus, if Waters usurped a corporate opportunity, no part of the usurpation occurred in Hutchinson County.

It follows that Gillman and Windle have not sustained their burden to show, as required by Texas Civil Practice and Remedies Code § 15.001 (Vernon 1986), that any part of their alleged cause of action accrued in Hutchinson County. As a result, the trial court reversibly erred in its venue determination. Tex.Civ.Prac. & Rem.Code Ann. § 15.064(b) (Vernon 1986). The ninth point of error is sustained.

Accordingly, the cause of action alleged by Gillman and Windle against, or actually in the right and for the benefit of, Accent and against Waters is severed, that part of the judgment is reversed, and the severed cause is remanded to the trial court to effect its transfer to a district court in Dallas County.