Rosenfeld v. W-3 Management 
















IN THE
TENTH COURT OF APPEALS
 

No. 10-95-019-CV

        BARBARA ROSENFELD,

                                                                                               Appellant
        v.

        W-3 MANAGEMENT, INC.,

                                                                                               Appellee
 

From the County Court at Law No. 2
Brazos County, Texas
Trial Court # 39,108-CCL2
                                                                                                    

O P I N I O N
                                                                                                    

          This is an appeal by the defendant from a summary judgment in a conversion case. 
Barbara Rosenfeld complains the trial court erred in granting the motion for summary judgment
filed by W-3 Management, Inc., (W-3) and in awarding them attorney's fees. We reform to
eliminate the awarding of attorney's fees and, as reformed, affirm.
I. Procedural and Factual Background
          Penny Frederick and Rosenfeld are both fifty percent shareholders in W-3, a close
corporation doing business as Nutri-System Weight Loss Center of College Station. Frederick and
Rosenfeld are both directors in the corporation; Frederick also serves as president, and Rosenfeld
is the vice-president. On or about October 27, 1992, Rosenfeld withdrew $9,335.09 from W-3's
corporate bank account to pursue litigation on behalf of W-3 against Frederick. Rosenfeld
believed that Frederick was misusing her position within the corporation to further her own
individual financial interests at the expense of the corporation and that Frederick had "frozen" her
out of the corporate decision-making process. Rosenfeld's suit, however, was eventually
dismissed by the trial court for discovery abuse. Consequently, W-3 filed this conversion action
on September 29, 1993, in the County Court at Law Number Two of Brazos County to recoup the
$9,335.09 withdrawn by Rosenfeld, plus exemplary damages, attorney's fees, and interest.
          On May 16, 1994, W-3 filed a motion for summary judgment, claiming that its summary
judgment evidence established all the elements of its conversion action as a matter of law. 
Rosenfeld filed her response on June 23. On October 10, 1994, the trial court granted W-3's
motion for summary judgment, awarding W-3 the actual damages it had requested, interest on the
actual damages, and attorney's fees. Rosenfeld's appeal followed.
II. Whether Summary Judgment Was Improperly Granted
          In her first two points of error, Rosenfeld argues the trial court erred in concluding that
W-3, in its summary judgment proof, established as a matter of law all the elements of its
conversion cause of action. As the plaintiff and movant in this suit, W-3 bore the burden of
conclusively proving each of the elements of its cause of action as a matter of law. Swilley v.
Hughes, 488 S.W.2d 64, 67 (Tex. 1972); Brazos Valley Community Action Agency v. Robison,
900 S.W.2d 843, 845 (Tex. App.—Corpus Christi 1995, writ denied). The movant meets its
burden if it produces evidence that is sufficient to support an instructed verdict at trial. Brownlee
v. Brownlee, 665 S.W.2d 111, 112 (Tex. 1984). If Rosenfeld submitted summary judgment
evidence disproving, or establishing a fact issue on, at least one element of W-3's cause, then
summary judgment should not have been granted. Id.
          The question thus arises as to what are the elements of a conversion cause of action. 
Conversion is the unauthorized and unlawful assumption and exercise of dominion and control
over the personal property of another which is to the exclusion of, or inconsistent with, the
owner's rights. Waisath v. Lack's Stores, Inc., 474 S.W.2d 444, 446 (Tex. 1971); Whitaker v.
Bank of El Paso, 850 S.W.2d 757, 760 (Tex. App.—El Paso 1993, no writ); Beam v. Voss, 568
S.W.2d 413, 420-21 (Tex.Civ.App.—San Antonio 1978, no writ). Ordinarily, the plaintiff must
also establish that he demanded return of the property, and that the defendant refused to return it. 
Hull v. Freedman, 383 S.W.2d 236, 238 (Tex.Civ.App.—Fort Worth 1964, writ ref'd n.r.e.). 
Demand and refusal are not necessary, however, when the possessor's acts manifest a clear
repudiation of the plaintiff's rights. Loomis v. Sharp, 519 S.W.2d 955, 958
(Tex.Civ.App.—Texarkana 1975, writ dism'd).
          On appeal, Rosenfeld does not argue that she did not exercise dominion and control over
the personal property of W-3 or that W-3 never issued a demand for the return of the funds;
instead, she contends (1) that, as vice-president of W-3, as a member of the board of directors,
and as a shareholder of the corporation, she was authorized to withdraw the funds from W-3's
bank account and (2) that, because she intended to use the money to sue Frederick for the benefit
of the corporation, her use of the money was consistent with W-3's rights. W-3 in its summary
judgment proof, therefore, must have conclusively established these two elements as a matter law
and that no question of fact exists concerning either one of them. Swilley, 488 S.W.2d at 67;
Brazos Valley Community Action Agency, 900 S.W.2d at 845.
A. WHETHER ROSENFELD WAS AUTHORIZED TO WITHDRAW THE
MONEY

          We will first examine Rosenfeld's argument that she was authorized to withdraw the money
in question from W-3's bank account. She contends that a fact issue exists concerning whether
she was authorized by the corporation to withdraw the money for two somewhat overlapping
reasons. First, she contends that because she had signature authority on the corporation's bank
account, she had the authority from the corporation to withdraw any money she believed necessary
for the corporation's well-being. Second, she maintains that the informal structure of W-3 as a
close corporation, combined with her status as a signatory on the corporate bank account, provided
her the authorization she needed to take the money even though the corporate bylaws indicate
otherwise. In reviewing Rosenfeld's arguments, we will bear in mind the standard of review in
summary judgment cases:
1. The movants for summary judgment have the burden of showing that there is no
genuine issue of material fact and that they were entitled to judgment as a matter of law;
 
2. In deciding whether there is a disputed material fact issue precluding summary
judgment, evidence favorable to the nonmovant will be taken as true; and
 
3. Every reasonable inference must be indulged in favor of the nonmovant and any doubts
resolved in his favor. 

Nixon v. Mr. Property Management Co., Inc., 690 S.W.2d 546, 548-49 (Tex. 1985).

          We will now consider Rosenfeld's first reason for her belief that she was authorized to
withdraw the disputed funds from W-3's bank account. She argues that, since both the corporation
and the only other shareholder in the company, Frederick, allowed her continued access to the
corporate bank account as a signatory on the account, even after a relocation of the corporate
offices after the initial issuance of the signature card, an inference arises that she was authorized
to withdraw the money. Rosenfeld's access to the corporate account must be analyzed according
to each of her three identities in the corporation; as vice-president, as a director, and as a
shareholder.
1. Vice-President
          W-3's bylaws established the authority of the vice-president to act on behalf of the
corporation as follows: "The vice president . . . shall, in the absence or disability of the president,
perform the duties and exercise the powers of the president and shall perform such other duties
and have such powers as the board of directors may from time to time prescribe." No other duties
are provided by the bylaws to the vice-president.



          Concerning the question of authorization from the board, Rosenfeld, when answering
questions from W-3's attorney at a deposition about the source of the alleged authority for her to
withdraw the money, indicated that she had no authorization from the board to withdraw the
money.


 The sources of authority Rosenfeld did provide were that she was a fifty-percent
shareholder in the corporation; that she and Frederick had agreed in a meeting with W-3's attorney
that any legal fees incurred in resolving Rosenfeld's "freeze-out" complaint would be paid for by
the corporation; and that W-3's attorney had at some time advised Rosenfeld to consult her own
attorney.
          Rosenfeld contends that, since the board permitted her to remain as a signatory of the
corporate bank account, it implicitly authorized her to withdraw money from the account whenever
she saw fit. This argument is flawed. Rosenfeld as vice-president could only withdraw funds
from the account when authorized to do so by either the board or by the incapacity of the
president. See Dreeben v. First Nat'l Bank of McKinney, 100 Tex. 344, 99 S.W. 850, 851 (1907). 
In the event that such authorization did issue, Rosenfeld would have then been able, in order to
meet the requirements of the bank for withdrawal, to go to the bank and withdraw the moneys she
needed to. Her ability to meet the standards of the bank for withdrawal does not mean that the
board intended to authorize her to withdraw corporate funds on her own individual volition. See
Kennedy v. Beasley, 606 S.W.2d 1, 3 (Tex. Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.)
(just as status of signatory on an account does not indicate ownership of a bank account, status of
signatory on a corporate bank account does not indicate authorization from the corporation to the
signatory to withdraw the funds). Rosenfeld's argument about being a signatory is without merit.
          Rosenfeld further argues that the bylaws are not controlling over the management of W-3
because Frederick on at least three occasions violated them—when she loaned money to an
employee, when she allowed an employee to use a company car for personal use, and when she
overcompensated herself one year by approximately $30,000.00. She contends that Frederick's
failure to abide by the bylaws also gave her license to violate the bylaws and allowed her to
establish, on her own, new procedures for the operation of W-3. Rosenfeld in her brief, however,
does not state which provisions in the bylaws were violated by Frederick's acts; therefore, we can
only conclude that no violations occurred. See Tex. R. App. P. 74(f).
          With regard to her argument that she could act unilaterally on behalf of the corporation,
Rosenfeld asserts that the nature of a close corporation is very similar to the nature of a
partnership and, therefore, she had the authority to act on behalf of and bind W-3 in much the
same way a partner can unilaterally act on the behalf of and bind a partnership. See Tex. Bus.
Corp. Act Ann. art. 12.32 (Vernon Supp. 1996). Articles 12.01 through 12.54 of the Business
Corporation Act establish procedures for the creation, termination, and governance of a close
corporation. Tex. Bus. Corp. Act Ann. arts. 12.01-12.54. That these procedures are more
informal than regular corporations does not mean that the procedures can be disregarded and the
close corporation operated like a partnership. The procedures, obviously, must still be followed. 
Therefore, Rosenfeld's argument that she could unilaterally obtain for herself from W-3
authorization to withdraw money from W-3's bank account simply because W-3 is a close
corporation is without merit.
          Without any authorization from either the bylaws or the board to withdraw the funds, we
conclude that Rosenfeld's status as corporate vice-president did not invest her with the authority
to withdraw any funds on behalf of the corporation.
2. Director
          Neither did Rosenfeld's status as a director of the corporation allow her to withdraw the
money. The individual actions of a director ordinarily cannot bind the corporation. American
Bank & Trust Co. v. Freeman, 560 S.W.2d 444, 446 (Tex.Civ.App.—Beaumont 1977, writ ref'd
n.r.e.). Directors exercise their powers only as a body at meetings duly assembled. Id. The
summary judgment evidence establishes that no such assembly ever occurred. Accordingly,
Rosenfeld's individual acts as a director of W-3 cannot be considered to have been authorized by
W-3.
3. Shareholder
          Similarly, a corporate shareholder has no power or authority to participate in or control
the general management of the business and affairs of the corporation. Accent Energy Corp. v.
Gillman, 824 S.W.2d 274, 278 (Tex. App.—Amarillo 1992, writ denied). Shareholders in a close
corporation may manage the corporation if such provision is made in the articles of incorporation
or in a shareholder's agreement. See Tex. Bus. Corp. Act Ann. art. 12.32(a); Accent Energy
Corp., 824 S.W.2d at 278. In the instant case, however, no such provisions were made either by
a shareholder agreement or within the articles of incorporation. Therefore, Rosenfeld's argument
that she was authorized to withdraw the money because she was a fifty percent shareholder in W-3
is without merit.
B. WHETHER ROSENFELD'S USE OF THE MONEY WAS CONSISTENT
WITH W-3'S OWNERSHIP OF IT

          Having decided that the summary judgment evidence established conclusively that
Rosenfeld's taking of the money was not authorized by W-3, the conclusion follows that because
she lacked the authorization to withdraw the money, the withdrawal was necessarily inconsistent
with W-3's ownership of it. Therefore, we conclude that W-3 did establish as a matter of law the
two elements of the conversion cause of action which Rosenfeld contests on appeal. 
          We find none of Rosenfeld's arguments in her first two points of error to have merit;
therefore, we overrule the points.
III. Whether the Trial Court Erred in Awarding Attorney's Fees
          In her third and fourth points of error, Rosenfeld argues the trial court erred in awarding
attorney's fees for any one of three reasons; first, because a material fact issue exists concerning
the amount of the fees to be awarded; second, because W-3 never requested attorney's fees in its
pleadings; and third, because there is no statutory or other authorization for the recovery of
attorney's fees in conversion cases. See Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (Vernon
1986). We will consider only the third contention.
          Attorney's fees cannot be recovered in a tort action unless provided by statute or by
contract between the parties. Federal Deposit Ins. Corp. v. Golden Imports, Inc., 859 S.W.2d
635, 646 (Tex. App.—Houston [1st Dist.] 1993, no writ). At least concerning actual damages,
there is no statutory authorization for the awarding of attorney's fees in a conversion action. Tex.
Civ. Prac. & Rem. Code Ann. § 38.001; see Golden Imports, 859 S.W.2d at 646-47; Lee v.
McDonnell, 72 S.W. 612, 31 Tex. Civ. App. 468 (1903, no writ). W-3 brought its cause of
action solely in conversion; the final judgment provided no award for exemplary damages; and the
record reveals no agreement between the parties for attorney's fees. Therefore, the trial court
erred as a matter of law in awarding attorney's fees. The judgment is reformed to eliminate the
awarding of attorney's fees and, as reformed, is affirmed.


                                                                                 BOBBY L. CUMMINGS
                                                                                 Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Affirmed as reformed
Opinion delivered and filed December 19, 1995
Do not publish