John Thomas GRIFFIN, Appellant,

v.

Dr. John R. PHILLIPS, Appellee.

No. 4899.

Court of Civil Appeals of Texas, Eastland.

Sept. 16, 1976.

Rehearing Denied Nov. 4, 1976.

John H. Holloway, Houston, for appellant.

Howard S. Hoover, Hoover, Cox & Miller, W. N. Arnold, Jr., Fulbright & Jaworski, Houston, for appellee.

McCLOUD, Chief Justice.

This is a medical malpractice case involving fraudulent misrepresentations of a doctor regarding the necessity for and beneficial effects of an operation.

Plaintiff, John Thomas Griffin, sued defendant, Dr. John R. Phillips, alleging damages resulting from defendant's negligence and fraudulent misrepresentations.

The jury found that defendant was negligent[1] in performing the surgery as a treatment or cure for emphysema, and such negligence was a proximate cause of plaintiff's damages. It also found that defendant made fraudulent misrepresentations to plaintiff regarding the proposed surgery, and assessed actual damages of $2,900 together with exemplary damages of $25,000. Judgment was entered for plaintiff for the actual damages only. Plaintiff, John Thomas Griffin, has appealed contending the court erred in not awarding the $25,000 exemplary damages. We affirm.

The jury found that Dr. Phillips represented several specific facts in connection with the proposed surgery; that the "representation or representations" were not true in whole or in part; that plaintiff relied upon the truth of such "representation" in agreeing to the surgery; that such "representation" was a material inducement to plaintiff to have the surgery; that plaintiff sustained damage as a proximate cause of such "representation"; and, that one or more of the statements made by defendant was a misrepresentation of facts. The term "misrepresentation" was defined as a "falsehood or untruth with the intent and purpose of deceit, *whether the speaker had actual knowledge of the falsity or ignorance of the truth of such representation.*" (Emphasis added)

1. See *Hood v. Phillips*, 537 S.W.2d 291 (Tex. Civ.App.—Beaumont 1976, writ granted) for discussion of rule conerning unnecessary surgery.

This appeal is principally concerned with the effect of the jury's answer to Special Issue 10, which was as follows:

"Do you find from a preponderance of the evidence that when Dr. Phillips made the representation, he knew it was not true or he made it recklessly without any affirmative knowledge of its truth and as a positive assertion of fact with intention Mr. Griffin rely upon such material representation?

Answer 'We do' or 'We do not'.

Answer: *We do not.*"

The jury also failed to find in Special Issue 18 that defendant's conduct in performing the surgery constituted wanton conduct. The jury was instructed that "wanton conduct" is meant that defendant "committed the act regardless of the rights of Mr. Griffin or under circumstances as would indicate a wicked or mischievous intent".

Plaintiff first argues the court erred in not awarding exemplary damages because it is immaterial whether the defendant knew the statements were untrue. We disagree.

The elements of fraud are summarized in 25 Tex.Jur.2d Fraud and Deceit, § 13 as follows:

" . . . It is said that to state a cause of action for fraud that is based on false representations, the plaintiff is required to show that the defendant made or was connected with the making of the representation; that the representation was as to a material fact; that the representation was false at the time it was made; that the representation was made with intent to induce the plaintiff to do or refrain from doing some act; that the representation was relied on by the plaintiff—in other words, that the plaintiff believed it to be true and was induced thereby to act or refrain from acting; and that the plaintiff thereby suffered damage or injury . . . "

Knowledge that a statement is false is not an essential element of fraud. *Graves v. Hartford Accident & Indemnity Co.*, 138 Tex. 589, 161 S.W.2d 464 (1942); *Allison v. Blewett*, 348 S.W.2d 182 (Tex.Civ.App.—Austin 1961, writ ref. n.r.e.). However, knowledge that a representation is untrue is required in order to recover exemplary damages. The court in *Dennis v. Dial Finance & Thrift Company*, 401 S.W.2d 803 (Tex.1966) said:

"A person who intentionally misrepresents facts for the purpose of injuring another is guilty of wanton and malicious conduct. The allowance of exemplary damages in cases of wilful and deliberate fraud does not, therefore, do violence to the rule quoted above . . . "

The applicable rules were stated in *Baker v. Moody*, 219 F.2d 368 (5th Cir. 1955) as follows:

"In an action for actual damages, it is not necessary that the maker know his representations are false, if they actually be such, but his liability is restricted to the monetary loss. On the other hand, to recover exemplary damages, representations must not only be false but willfully made, with full knowledge of their falsity and the intent of the maker that the other party should act thereon, and that the latter was thereby injured. In a suit for both actual and exemplary damages the plaintiff may recover either or both, dependent upon the circumstances proven as a whole and the judgment of the jury . . . "

In *Success Motivation Institute, Inc. v. Lawlis*, 503 S.W.2d 864 (Tex.Civ.App.—Houston (1st Dist.) 1973, writ ref. n.r.e.), the court on motion for rehearing, denied exemplary damages and stated:

" . . . no finding that the defendant or its agents knew the representations to be untrue is necessary to support the judgment for actual damages. Such a finding is necessary to establish that the fraud was intentionally committed for the purpose of injuring the plaintiffs. Without such a finding exemplary damages cannot be awarded. *Dennis v. Dial Finance & Thrift Company*, 401 S.W.2d 803 (Tex.1966) . . . "

Plaintiff next argues the court erred in disregarding Special Issue 23, the unpredicated exemplary damage issue, because defendant's motion for judgment for actual damages only, was not a motion to disregard the issue, as required under Rule 301, Texas Rules of Civil Procedure. In view of the jury's answer to Special Issue 10, the exemplary damage issue became an immaterial issue, and the court properly disregarded the issue without requiring defendant to comply with the procedure under Rule 301. 4 McDonald, Texas Civil Practice, Judgments, § 17.31 (1971); *Smith v. Whitehead*, 363 S.W.2d 369 (Tex.Civ.App.—Houston 1962, no writ); *Wilkinson v. Southern Farm Supply Association*, 409 S.W.2d 435 (Tex.Civ.App.—Amarillo 1966, writ ref. n.r.e.).

Plaintiff asserts the court erred in denying his motion to disregard the negative jury finding to Special Issue 10, and in refusing to enter judgment notwithstanding the verdict for the exemplary damages found by the jury, because the uncontroverted evidence established, as a matter of law, that defendant knew the representations were not true, or he made them recklessly without affirmative knowledge of the truth and with intention that plaintiff rely upon such representations in agreeing to the proposed surgery. Alternatively, plaintiff contends the negative finding to Special Issue 10 is so against the overwhelming great weight and preponderance of the evidence as to be manifestly wrong and unjust.

In 1966, defendant examined plaintiff and informed him that he had emphysema. Thereafter, defendant performed glomectomy surgery on plaintiff. The procedure involved removing the carotid body and related nerves from plaintiff's neck. Plaintiff contends the surgery was unnecessary and an improper treatment for emphysema.

In 1960, defendant became aware of a newly developed emphysema carotid body surgical procedure developed by a Dr. Nakayama in Japan. Dr. Nakayama lectured extensively and wrote numerous articles on the subject. Defendant became interested in the surgical procedure and discussed the operation with Dr. Nakayama and Dr. Overhalt, a "respected physician and surgeon," from Boston, Massachusetts, who had adopted the technique from the Japanese doctor. Defendant began performing the surgery in the Houston area and keeping records relative to the success or failure of the technique. In 1964, defendant presented his findings on carotid body surgery to the American Medical Association meeting in San Francisco, California. He also wrote medical papers, published in various medical journals, discussing the beneficial effects of carotid body surgery. There are only about five doctors in the United States who have performed as many as 1,000 of these operations. At the time of defendant's retirement in 1967, he had performed approximately 2,100 carotid body operations. He testified that the surgery took about 30 minutes and he normally charged $500 for each operation.

Dr. Thomas Petty, Associate Professor at the University of Colorado Medical Center, a specialist in pulmonary diseases, testified that the accepted medical treatment for emphysema is use of a combination of drugs, application of physical medical techniques to improve breathing, and avoidance of irritants. He stated that the removal of the carotid body is not an accepted procedure for either the cure or treatment of emphysema because the carotid body is an important regulatory mechanism, and the procedure is potentially harmful. He stated the procedure had been performed without much scientific rationale, tried by a number of physicians worldwide, but abandoned after found to be ineffectual.

Dr. George Alexander, a former president of the Harris County Medical Society, testified that in 1966 the accepted medical treatment for patients suffering from emphysema was to "make them quit smoking", avoid irritants to the lungs, and take certain drugs. On cross-examination, he stated he had no opinion on whether the carotid body operation was proper or improper.

Dr. Thomas Clark, a psychiatrist, stated that he could think of no neurological value resulting from the removal of the carotid

body. He thought it would be a psychic rather than physical experience.

The surgery is obviously a controversial procedure. Defendant testified he told plaintiff emphysema was an incurable disease. He stated that by "interrupting the nerve pathways, we would lessen the irritability and the spasm, and, hopefully the cough to the bronchial tubes." Defendant testified he considered himself a pioneer in this type of surgery.

■ The jury found that defendant made certain misrepresentations concerning the need for and beneficial effects of the surgery. However, the jury could have believed from the evidence that defendant believed the representations made to plaintiff. The evidence does not conclusively establish an intentional, knowing, deliberate and wilful misrepresentation by defendant. Also, we have considered the entire record and hold the jury's finding to Special Issue 10 is not against the great weight and preponderance of the evidence. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

Plaintiff further argues that the evidence conclusively establishes that defendant was grossly negligent in performing the surgery. We disagree. Gross negligence was defined as:

".  .  . that entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the right or welfare of the person or persons to be affected by it."

The evidence does not conclusively establish gross negligence.

We also hold, after reviewing the entire record, that the jury's failure to find defendant grossly negligent in performing the surgery was not against the great weight and preponderance of the evidence. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

We have considered all points of error and all are overruled.

The judgment is affirmed.