RETAMA MANOR NURSING CENTERS, INC. and GERIATRICS, INC., Appellants,

v.

Lee Roy COLE, d/b/a Lee Roy Cole Contractor, Appellee.

No. 1353.

Court of Civil Appeals of Texas, Corpus Christi.

May 10, 1979.

Rehearing Denied May 31, 1979.

Lev Hunt, Kleberg & Weil, Corpus Christi, for appellants.

Steve Q. McManus, Kilgore, Cole & McManus, Victoria, for appellee.

## OPINION

YOUNG, Justice.

In this case Lee Roy Cole, d/b/a Lee Roy Cole Contractor, appellee, sued Retama Manor Nursing Centers, Inc. and Geriatrics, Inc., appellants, for lost profits incurred when the appellants repudiated contracts to construct a nursing home addition.

Trial was to the court with a jury which found that Cole and the appellants had entered into two different oral contracts, that they had been breached, and that Cole sustained lost profits in the amount of $50,-000.00. Appellants filed a motion for judgment notwithstanding the verdict which was denied, and judgment was entered on the verdict. Appellants then filed their motion for new trial; this also was denied. Retama and Geriatrics appeal. We affirm.

The record fairly reflects the following facts. Appellants, Retama and Geriatrics, owned a nursing home in Alice, Texas. Geriatrics, based in Greely, Colorado, parent company and sole owner of Retama, was exploring the possibility of expanding the Alice nursing home. Harry Asmus, president of both Geriatrics and Retama and member of the board of directors of Retama, employed William L. Dassler, an architectural designer of Loveland, Colorado, to prepare plans and specifications for a 60-bed addition. Bids were accepted for the addition on June 5, 1974. Dassler, representing the appellants, flew to Alice, Texas, opened the bids of the four bidding contractors, and notified all contractors that their bids, the lowest of which was $460,000.00, were far in excess of the $400,000.00 price at which the addition could be financially feasible. Appellee's bid had been the lowest of the four bids. Dassler returned to Colorado and conferred with Harry Asmus concerning the bids.

Soon thereafter, Asmus and Dassler arranged a conference call with Cole and told him that Dassler would be going to Corpus Christi to confer with Cole in order to change the plans and specifications so that the addition might be built less expensively. The record indicates that Asmus told Cole to make his deals with Dassler, although Cole knew that Asmus had to approve any negotiations and deals made with Dassler. During the week of July 15 through July 19, 1974, Dassler and Cole met several times and made substantial alterations to the original plans and specifications. This included changing the floor plan for a 60-bed addition to a 74-bed addition.

Cole prepared a written proposal stating that he would build the 74-bed addition for $406,900.00, that the agreement would be based upon A.I.A. form contract A–101, that the bid was guaranteed for ten days from July 19, 1974, and that he would build the addition in 180 days according to the revised plans and specifications dated July 18, 1974. Dassler called Asmus from Corpus Christi and conferred with him concerning the changed price. Asmus said the price was acceptable and Dassler related this information to Cole. But, Cole knew at this point that until Dassler talked with Asmus in Colorado that they did not have an agreement. Dassler returned to Colorado with the proposal and revised plans and presented them to Asmus.

At this point in the testimony the evidence is markedly conflicting. Asmus contended at trial that he received the bid and plans, filed them, and later presented them to the Geriatrics planning committee, which decided that the proposal was too expensive. Dassler testified that Asmus received the proposal and told Dassler that the attorneys for Geriatrics would have to draw up a contract before any final agreement could be entered into. On the other hand, Cole testified that Dassler returned to Colorado on Friday, July 19, 1974, and called Cole on or about Monday, July 22, 1974, and told him the following: that he (Dassler) had met with Asmus and that Asmus had agreed to the changes; that Cole had a contract; that Cole should begin ordering

those items which were rapidly increasing in price; that Cole should initiate all other necessary preparation to begin construction on August 20, and that Asmus could not sign a written contract until August 20, 1974, because Geriatrics was involved in a merger. Cole stated that a few days later Dassler called him back and asked him to prepare a written contract and send it to Asmus. During this call, Dassler also guaranteed Cole that the appellants would sign the written contract on or before August 20, 1974. Cole was unable to procure an A.I.A. form contract A–101, so he called Dassler and asked him if an A.I.A. form contract A–107 would be acceptable; Dassler agreed that it would. So Cole wrote up the contract on an A–107 form and mailed it to Colorado to be signed.

Cole further claimed he talked to Asmus some time around the period from July 29 through August 2, 1974, to obtain directions on having certain powerlines removed so that he could begin construction. Asmus apparently told Cole that he was busy, that "Bill is handling it" and to "make his deal with Bill." Apparently, Dassler then called Cole and told him to have the lines removed so that he could begin by August 20. Asmus sent Cole a "plot plan" to show Central Power & Light that he had authority to have the lines removed and where the boundaries were located. Cole subsequently mailed the written contract to Asmus on August 3, 1974. During this time Cole had begun ordering some of the materials for the building.

On August 20, 1974, Cole called Dassler and asked about the signed contract. Dassler informed Cole that Asmus was in Corpus Christi and that he could have Asmus personally sign it there. Cole visited Asmus in Corpus Christi and Asmus refused to sign the contract and denied any agreement to build the addition. This suit followed.

In response to special issues the jury found: 1) and 2) that Bill Dassler and Harry Asmus had authority as agents to bind the appellants in a contract to construct the 74-bed addition; 3) and 5) that the appellants entered into an oral agreement to build the addition and an oral agreement to enter into a written contract to build; 4) and 6) that the appellants anticipatorily breached one agreement and breached the other agreement; and 7) that appellee's damages, measured in lost profits, were $50,000.00.

Appellants bring eight points of error. Point 1 complains that the trial court erred in rendering judgment against appellants because the statute of frauds barred the enforceability of the oral contracts herein. We disagree.

About the second of the two oral agreements; i. e., the oral agreement to sign a written contract, the evidence indicates that the terms of the purported oral contract were in conformity with A.I.A. form contract A–107. Article 23 of A–107 states that the contractor shall remedy any defect in materials or workmanship up to a period of one year from the date of substantial completion of the project. Generally this provision makes the contract within the contemplation of the statute of frauds because the contract could not be fully performed within the period of one year from the making of the contract. Tex.Bus. & Comm.Code Ann. § 26.01(b)(6) (Supp.1978) [1], *Page & Wirtz Construction v. Van Doran*, 432 S.W.2d 731 (Tex.Civ.App.—Amarillo 1968, writ ref'd n. r. e.).

Appellee contends, though, and we agree, that promissory estoppel precludes application of the statute of frauds to this case. The Restatement of Contracts § 178

---

1. "(a) A promise or agreement described in subsection (b) of this section is not enforceable unless the promise or agreement, or a memorandum of it, is

(1) in writing; and

(2) signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him.

(b) Subsection (a) of this section applies to:
  *  *  *  *  *  *
(6) an agreement which is not to be performed within one year from date of making the agreement; . . .."

Comment f (1932) recognizes that the doctrine of promissory estoppel may preclude a defense based upon the statute of frauds in these words:

"Though there has been no satisfaction of the Statute, an estoppel may preclude objection on that ground in the same way that objection to the non-existence of other facts essential for the establishment of a right or a defense may be precluded. . . . *and a promise to make a memorandum, if similarly relied on, may give rise to an effective promissory estoppel if the statute would otherwise operate to defraud."* (Emphasis supplied).

*"Moore" Burger, Inc. v. Phillips Petroleum Company,* 492 S.W.2d 934, 937 (Tex.Sup. 1972).

The jury found, and the evidence supports the conclusion, that the appellants, through their agents, promised to sign Cole's written agreement on August 20, 1974. Furthermore, Cole repeatedly stated that he relied on the appellants' promise to sign the written contract by ordering materials, incurring expenses, having powerlines moved and drafting the contract. Accordingly, in order to avoid an unjust result the promise should be enforced as if it had been signed. *H. Molsen & Co., Inc. v. Hicks,* 550 S.W.2d 354 (Tex.Civ.App.—El Paso 1977), writ ref'd n. r. e.); See Annot. 56 A.L.R.3d 1037 (1974).

■ Appellants disagree with that conclusion. They submit that the terms of the oral agreement, which the appellants purportedly promised to sign, are indefinite and that an agreement to make an agreement is unenforceable if the agreement is indefinite and uncertain as to essential terms. See *Radford v. McNeny,* 129 Tex. 568, 104 S.W.2d 472 (1937, opinion adopted); *Traweek v. Radio Brady, Inc.,* 441 S.W.2d 240 (Tex.Civ.App.—Austin 1969, writ ref'd n. r. e.). We agree with this general rule, but we find in the instant case that there was sufficient evidence that the parties had agreed on the essential terms which were embodied in the writing Cole sent Asmus to sign. It included such things as the con-tract price, time for payment, reference to plans and specifications, materials, location, length of construction, and other various terms and conditions. When Cole was asked at trial if the writing reflected the agreement he had reached with Dassler, he replied, "Yes." We find the terms and conditions incorporated in the written contract, which manifested Cole's oral agreement, to be sufficiently definite to render the oral contract to sign the written contract enforceable. See *Scott v. Ingle Bros. Pacific, Inc.,* 489 S.W.2d 554, 556 (Tex.Sup.1972).

In connection with our overruling this point 1 we also find that the parties entered into an oral contract on July 22, which was not subject to the statute of frauds. The proposal submitted on July 19, 1974, stated that the agreement would be according to A.I.A. form contract A–101. This particular form, though its provisions are similar to form contract A–107, does not contain nearly as many articles as the form contract A–107; e. g., it does not contain the one year workmanship guarantee. Thus, the provisions of this particular contract would have been performable within one year and not subject to the statute of frauds in any event.

We also find that the terms of the July 22 oral contract were sufficiently definite to form a binding contract. The price and the plans and specifications had been agreed upon. Moreover, the proposal Dassler took with him to Colorado on July 19, 1974, stated that the work would be completed within 180 days and the parties agreed at that time that Cole should prepare to begin construction on or about August 20, 1974. As to the schedule of payments, page 1 of the general conditions in the specifications provided for the method and timing of payments. Appellants' point 1 is overruled.

Appellants' points 2 and 3 contend that there was no evidence and insufficient evidence of Dassler's authority to enter into any binding contract. These contentions are also without merit.

■ We note here that the appellants have not brought any points of error chal-

lenging the jury's second fact finding that Asmus had authority to bind his principals in the oral contracts herein. A fact finding not challenged on appeal by a proper point of error is binding on the appellant. See *Cortez v. Cortez*, 457 S.W.2d 131 (Tex.Civ. App.—San Antonio 1970, no writ).

■ In connection with the determining of Dassler's authority, we will first briefly consider Asmus' authority. It is undisputed that an agent's status in a corporation as its president or as a member of the board of directors does not give him power to bind the corporation except as to routine matters arising in the ordinary course of business. *American Bank & Trust Co. v. Freeman*, 560 S.W.2d 444 (Tex.Civ.App.—Beaumont 1977, n. r. e.); *Templeton v. Nocona Hills Owners Association*, 555 S.W.2d 534 (Tex. Civ.App.—Texarkana 1977, no writ).

■ "... [T]here must be action of the board of directors of the corporation either in performing the act or authorizing someone else to perform it. It may be that such authority may at times be inferred from the circumstances surrounding the acts, ..." *Southern Kansas Ry. Co. of Texas v. Logue*, 139 S.W. 11, 14 (Tex.Civ. App.—San Antonio 1911), affirmed, 167 S.W. 805 (Tex.Sup.1914). We find that Asmus' authority can be inferred from the circumstances surrounding the subject contracts. More specifically, under this record we think the silence of the board of directors and their acquiescence in the transactions which preceded and followed the oral contracts to be sufficient evidence of apparent authority. See *Traylor v. Gray*, 547 S.W.2d 644, 652 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n. r. e.); *Brown v. Grayson Enterprises, Inc.*, 401 S.W.2d 653, 656 (Tex.Civ.App.—Dallas 1966, writ ref'd n. r. e.). The record is replete with Asmus' actions in connection with the formulation and actuation of the appellants' plans to build the addition in Alice. Asmus hired Dassler; authorized Dassler to open the bids in Alice; later authorized Dassler to spend a week in Corpus Christi negotiating with Cole for a construction contract; authorized Dassler to tell Cole that the con-

tract price was acceptable; and later authorized Dassler to call Cole and tell him that he had a contract. During this period of time the directors of both corporations made no effort to stop these activities but actually sat by and received the benefits of Cole's knowledge in preparing the plans and his efforts in preparing the site for construction. Even Asmus himself, after listening to all the testimony at trial responded as follows:

"Q Now, Mr. Asmus, if you do all the things Mr. Dassler did when he came down here and negotiated with Mr. Cole, and you have been sitting here listening to this trial, and you know what the testimony is about what Mr. Dassler did, don't you think it would be reasonable for a person like Mr. Cole to rely on Mr. Dassler?

A I would have to say it could be reasonable, yes."

Thus, we find sufficient evidence to support the trial court's finding that Asmus possessed authority to enter into these contracts.

■ As to Dassler's authority, we find the evidence sufficient to support a finding of apparent authority to bind the appellants according to the following pronouncement of the applicable principles:

"The doctrine of apparent authority is based on estoppel, and one seeking to charge a principle through the apparent authority of an agent to bind the principle must prove such conduct on the part of the principal as would lead a reasonably prudent person, using diligence and discretion, to suppose that the agent has the authority that he purports to exercise."

*Chastain v. Cooper & Reid*, 257 S.W.2d 422, 427 (Tex.Sup.1953).

Dassler was involved in nearly all negotiations leading up to the making of the oral contract herein. It is reasonable to deduce that all of the transactions mentioned earlier, when taken together, would be sufficient to lead a reasonably prudent person to believe that Dassler had the authority he purported to exercise to enter into the July

22 oral contract and to enter into the oral contract to execute a written contract. Appellants' points 2 and 3 are overruled.

Appellants' points 4 and 5 assert that there was no evidence and insufficient evidence to support the finding of an oral contract. After reviewing the entire record which has heretofore been summarized we find sufficient evidence of both an oral contract entered into on July 22, 1974, and an oral contract to sign a written contract entered into a few days later. Appellants' points 4 and 5 are overruled.

Appellants' points 6 and 7 contends there was no evidence and insufficient evidence to support the submission of issue No. VII which reads as follows:

> "SPECIAL ISSUE NO. VII
> Find from a preponderance of the evidence the sum of money, if any, which the defendants are indebted to plaintiffs as a result of the anticipatory breach, or the breach of their agreement, if any. Answer in dollars and cents.
>     $50,000.00
> You are instructed in this regard that the measure of damages is the profit which the plaintiff would have made from full performance by the defendants."

More particularly, appellants complain that the appellee failed to prove any prior history of profits as was discussed in *Southwest Battery Corporation v. Owen*, 131 Tex. 423, 115 S.W.2d 1097 (1938). We find, however that the instant case does not demand proof of prior profitability for the appellee to recover. In *Owen*, the controversy involved the breach of a contract to provide batteries to a distributor. The distributor sued for lost profits when it was forced to go out of business for lack of a supply of batteries. In that case it was necessary to prove prior profitability to show that future sales would have been made on a profitable basis, especially where the plaintiff has been forced out of business. Compare 17 Tex.Jur.2d, Damages § 148 (1960).

In the present case, however, we are dealing with a single contract covering one transaction in which both parties were committed to a definite price in exchange for certain materials and services, Consequently, the potentiality for profits is not nearly as speculative as in *Owen*, supra, and lost profits can be measured by the difference between the contract price and what it would have cost the contractor to perform the contract in accordance with the plans and specifications. *Deal Dev. Co. v. Amarillo Concrete Contractors*, 554 S.W.2d 294, 296 (Tex.Civ.App.—Waco 1977, no writ); *Farris v. Smith Erectors, Inc.*, 516 S.W.2d 281, 283–84 (Tex.Civ.App.—Houston [1st Dist.] 1974, no writ); *Carras v. Birge*, 211 S.W.2d 998, 1003 (Tex.Civ.App.—Dallas 1948, writ ref'd n. r. e.). At the trial Cole testified about the contract price and then expounded upon the bid estimation sheet he used to arrive at a figure for his bid and his profit of approximately $83,000.00. We think this evidence is sufficient to support the jury's award of $50,000.00 in lost profits. Appellants' points 6 and 7 are overruled.

Appellants' point 8 argues that the trial court erred in refusing to submit to the jury the following tendered special issue:

> "SPECIAL ISSUE NO. II
> Do you find from a preponderance of the evidence that Plaintiff and Defendants on or about July 22, 1974, intended that any agreement entered into by them orally should be embodied in a writing and signed by them before such agreement was binding?
> Answer: 'We do' or 'We do not'.
> Answer _____"

The above issue is in the nature of an inferential rebuttal issue to the two issues submitted to the jury asking whether Cole and the appellants' agents had entered into oral contracts. See Hodges, Special Issue Submission In Texas § 15 (1959). Inferential rebuttal issues should not longer be submitted. Rule 277, T.R.C.P. Appellants' point 8 is overruled.

Appellee brings a single cross point which we need not consider in light of our decisions on appellants' points.

The judgment of the trial court is affirmed.