**UNITED STATES FIDELITY AND GUARANTY COMPANY**

v.

**EASTERN HILLS METHODIST CHURCH.**

No. 18325.

Court of Civil Appeals of Texas, Fort Worth.

Nov. 20, 1980.

Rehearing Denied Dec. 18, 1980.

Bailey, Williams, Westfall, Lee & Fowler, and James A. Williams, Dallas, for appellant.

Simon & Simon, and Marilyn B. Walker, Fort Worth, for appellee.

Elvin E. Tackett, Bedford, for amicus curiae.

## OPINION

SPURLOCK, Justice.

Eastern Hills Methodist Church (Church) obtained a judgment against Cooley, Cooley Building and Lumber Company of Fort Worth (Contractor) and United States Fidelity and Guaranty Company (USF&G), who wrote the Cooley performance bond. This followed a jury trial. Only USF&G appealed.

We affirm.

The Church let a building contract to the Contractor to build an addition to the church. USF&G issued a performance bond guaranteeing performance of the work. The jury found that the Contractor failed to construct the addition in substantial compliance with the plans and specifications as follows: (1) the amount and installation of the concrete enforcement steel; (2) the compaction of the subfloor fill, and (3) the condition of the bottom of the grade beam ditches at the time the grade beams were poured. The jury awarded damages of $31,581.00 against the Contractor and USF&G. Judgment was rendered allowing prejudgment interest.

USF&G by its first point of error asserts the trial court erred in rendering judgment because the cause of action is barred by statutory or contractual limitations. The performance bond provides: "Any suit under this bond must be instituted before the expiration of two (2) years from the date on which final payment under the Contract falls due." The job was completed and the Contractor was paid on October 17, 1967. Suit was filed on June 18, 1971. Suit was filed less than four years but more than two years from the date on which final payment under the contract was due. USF&G contends the suit is barred by the language in the contract and, if not, then it is barred by the two year statute of limitations, which is a contractual limitation authorized by Tex. Rev.Civ.Stat.Ann. art. 5545 (1958).

In June, 1968, major cracking in the foundation occurred. The cracks went entirely through the foundation. There was no reinforcement steel where it belonged but it was simply laying flat in the bottom of the excavation. The foundation was poured with no inspection by the architect. The architect inquired of the Contractor if he had followed plans and specifications in the pouring of the foundation and the Contractor misrepresented to him that he had followed the plans and specifications. After the foundation was poured it was impossible to determine whether the Contractor had misrepresented these facts without tearing up the foundation. The foundation problems were the major cause of the damage done to the building.

Tex.Rev.Civ.Stat.Ann. art. 5545 (1958), provides that "No person, firm, corporation, association or combination of whatsoever kind shall enter into any stipulation, contract, or agreement, by reason whereof the time in which to sue thereon is limited to a shorter period than two years. And no stipulation, contract, or agreement for any such shorter limitation in which to sue shall ever be valid in this State." In *Taber v. Western Union Telegraph Co.*, 104 Tex. 272, 137 S.W. 106 (1911), the supreme court held that a stipulation in a contract requiring notice of claim to be presented within ninety days after a message was filed was void because the time in which to sue was limited to a shorter time than provided by statute. This decision was followed in *Smith v.*

*International & G N R. Co.*, 138 S.W. 1074 (Tex.Civ.App.–Galveston 1911, no writ), where a bill of lading provided for the giving of notice before the expiration of ninety days. In *Texas & P. Ry. Co. v. Langbehn*, 158 S.W. 244 (Tex.Civ.App.1913, no writ), the court followed the *Taber* reasoning and held that any provision requiring action to be brought before expiration of the statutory time period was void. In *Southern Surety Co. v. Austin*, 22 F.2d 881, 882 (5th Cir., 1927), that court, interpreting Texas law, held a surety contract requiring suit to be brought within two years after the loss was invalid because it restricted the time of suit to less than two years when a time period of two years was provided by law. Insurance policies with similar language have been held void because of the effect of the statute. *National Military Mutual Life Ins. Co. v. Cross*, 379 S.W.2d 96 (Tex.Civ.App.–Corpus Christi 1964, no writ); *Culwell v. St. Paul Fire & Marine Ins. Co.*, 79 S.W.2d 914 (Tex.Civ.App.–Eastland 1935, writ dism'd); *American Surety Co. v. Martinez*, 73 S.W.2d 109 (Tex.Civ. App.–El Paso 1934, writ ref'd); *Commercial Standard Ins. Co. v. Lewallen*, 46 S.W.2d 355 (Tex.Civ.App.–Eastland 1932, writ ref'd).

We hold the contractual provision requiring suit to be brought within two years is void. Since it is void, the four year statute of limitation applies. Tex.Rev.Civ. Stat.Ann. art. 5527 (1958). Under similar facts the following cases held the four year statute of limitations applies. *Grand Lodge, Colored Knights of Pythias v. Hill*, 277 S.W. 797 (Tex.Civ.App.–Austin 1925, no writ); *National Military Mutual Life Ins. Co. v. Cross, supra; Culwell v. St. Paul Fire & Marine Ins. Co., supra; Taylor v. National Life & Accident Ins. Co.*, 63 S.W.2d 1082 (Tex.Civ.App.–Amarillo 1933, writ dism'd).

The four year statute of limitations begins to run as of the date the cause of action accrued, in this case, when the major foundation cracks appeared during the spring of 1968. Since suit was filed in June of 1971, Church's action was instituted well within the required time period. We hold this suit is not barred by the contractual limitations provision or the statute of limitations. Point of error no. one is overruled.

By its second point of error USF&G complains that a supplemental agreement entered into between the Church and the Contractor had the effect of releasing USF&G from any responsibility on its performance bond.

On October 26, 1966, the Church and the Contractor entered into the construction contract. An architect was employed by the Church. The Contractor was notified by the architect at various times about minor defects, such as insulation above the plastic soffits, removal of mortar from masonry surfaces, inconsistency of color of door hinges, completion of a closure above a door, and improvement of caulking and grouting in certain places.

On June 26, 1967, the Church and the Contractor entered into a supplemental agreement which stated the Contractor had failed to perform certain work and that the owner claimed the right to terminate the contract, but upon the consideration of the Contractor's agreeing to fully perform the original contract under its plans and specifications, the Church would not terminate the original contract. Attached to the supplemental agreement was a list of about twenty items of minor nature which the Contractor agreed to correct or finish in accord with the original contract. There is testimony from the architect that the supplemental agreement did not change any provision of the original contract and that the architect was in consultation with the bonding company during this period of time. The purpose of the supplemental agreement was to forcefully call the Contractor's attention to the known defects so that he could quickly correct them. There is evidence that because of the Contractor's concealment of the defects in the foundation and supporting structure, neither the Church nor the Church's architect knew of the defect in the foundation until large cracks appeared after the Contractor had completed the job and been paid as detailed above.

The Contractor's performance was secured by USF&G's bond. The bond provided: "The surety hereby waives notice of any alteration or extension of time made by the Owner." It further provided: "Whenever Contractor shall be, and declared by Owner to be in default under the Contract," USF&G was obligated to complete the contract or to obtain bids to complete the contract.

USF&G contends the supplemental agreement was a material alteration of the original contract which had the effect of releasing USF&G. This material alteration is alleged to have been the change in consideration effected by the Church's permitting the Contractor to complete the original contract after default under that contract. The architect testified the known defects were of such a nature the Church could not have terminated the contract when the supplemental agreement was entered into.

■ The Supreme Court in *United Concrete Pipe Corp. v. Spin–Line Co.*, 430 S.W.2d 360 (Tex.1968), discussed material changes in contracts as releasing sureties. In that case, jury findings had been obtained that the changes were material but the court found that as a matter of law the nature of the alteration was such that the changes could only be beneficial to the surety. In the instant case, the agreement of June 26, 1967, was simply to the effect that the Contractor would fulfill his obligations to the Church undertaken in the October 26, 1966, contract which USF&G had guaranteed. Contractor's agreeing for a second time to complete the original contract as required could not place USF&G in a different position. The party claiming the material alteration has the burden of proof to show a material alteration, and in this case we hold that USF&G failed to carry this burden. No issue concerning this defense was submitted to the jury. Appellant's second point of error is overruled.

USF&G by its third point of error asserts that the trial court erred in awarding interest from November 1, 1967. This point of error is overruled. As noted in 17 Tex. Jur.2d *Damages* sec. 28 (1960).

"Unliquidated demands.

"Interest, as damages, may be allowed on unliquidated demands whether arising out of a breach of contract or from a tort, but the decisions are characterized by uncertainty as to the existence and extent of the defendant's liability in particular circumstances. . . ."

Most of this uncertainty has been removed by the Supreme Court's holding in *Black Lake Pipe Line Co. v. Union Const. Co.*, 538 S.W.2d 80 (Tex.1976). There the court held that where damages are established as of a definite time and the amount thereof definitely determinable, interest is recoverable as a matter of right from the date of the injury or loss. See also 17 Tex.Jur.2d *Damages* sec. 31 (1960), and cases cited therein. Section 31 reads:

"When interest begins.

"In the cases where interest constitutes a proper element of damages it is recoverable from the date of the accrual of . . . action."

■ Church's pleadings included a prayer for "interest such as allowed by law", and this is sufficient to support an award of prejudgment interest. *Black Lake Pipe Line Co. v. Union Const. Co.*, *supra* at 96. Since the cause of action became known to the Church in June 1968, prejudgment interest should certainly be allowed from that date. The defective foundation was poured during the spring of 1967, but the fact that it was defective was not known to the Church at the time. Throughout the construction, Contractor was making corrections of his work. Some of these corrections were made after being detailed by the Church, through its architect, and until the Church accepted delivery of the building and paid the Contractor the terms of the contract required that the Contractor complete the building in accordance with the terms and specifications of the contract. Thus throughout the construction of the building, Contractor had both the obligation to correct deficiencies and the opportunity to make those corrections. We hold that computation by the trial court of prejudgment interest from

November 1967, which was the month following payment of Contractor and after delivery of the building on October 17, 1967, was proper. USF&G's third point of error is overruled.

Each of USF&G's points of error has been considered, and each is overruled. The judgment of the trial court is affirmed.