Victor M. LARRUMBIDE, and Tillie D. Larrumbide, Individually and on Behalf of the Estate of Julia Ann Larrumbide, Deceased, Appellants,

v.

DOCTORS HEALTH FACILITIES d/b/a Doctors Hospital, Appellee.

No. 05–86–00482–CV.

Court of Appeals of Texas, Dallas.

May 7, 1987.

Rehearing Denied Aug. 27, 1987.

Darrell Panethiere, Paula Fisette-Sweeney, Dallas, for appellants.

Charles L. Perry, Robert A. Gwinn, Dallas, for appellee.

Before WHITHAM, BAKER and LAGARDE, JJ.

LAGARDE, Justice.

Victor M. Larrumbide and Tillie D. Larrumbide appeal from a take-nothing judgment rendered in their wrongful death and survivorship action against Doctors Health Facilities d/b/a Doctors Hospital, arising from the death of their daughter, Julia.

The Larrumbides brought suit against the hospital, Dr. Thomas Froehlich, and Emergency Health Services Associates. The Larrumbides settled their claim against Froehlich and Emergency Health Services Associates for $179,000 and proceeded to trial on their claim against the hospital. The jury awarded $50,000 for Julia's conscious pain and suffering, $50,000 each to Victor and Tillie Larrumbide for past mental anguish and loss of society, $50,000 for medical, funeral, and burial expenses, and $1,000,000 exemplary damages. The trial court set aside the jury's award for exemplary damages and reduced the jury's award for medical, funeral, and burial expenses to $15,468.[1] Accordingly, because the damages assessed by the jury against the hospital did not exceed the $179,000 set-off for the contributing tortfeasors, the trial court rendered a take-nothing judgment. We affirm.

In their first point of error, the Larrumbides contend:

THE DISTRICT COURT ERRED IN OVERRULING APPELLANTS' MOTION FOR NEW TRIAL AND IN ENTERING JUDGMENT ON THE JURY VERDICT, BECAUSE THE JURY FINDING THAT TILLIE LARRUMBIDE WOULD BE FAIRLY AND REASONABLY COMPENSATED FOR HER *FUTURE MENTAL ANGUISH* BY AN AWARD OF $0 IS AGAINST THE GREAT WEIGHT AND PREPONDERANCE OF THE EVIDENCE.

(Emphasis added). In their identically worded second point of error, the Larrumbides complain of the jury's award of "$0" for Victor Larrumbide's "future mental anguish." The complained-of jury awards,

however, were made in response to a special issue that asked:

Find from a preponderance of the evidence what sum of money, if any, if paid now in cash, would fairly and reasonably compensate the Larrumbides for their losses, if any, resulting from the death of Julie Larrumbide:

\* \* \* \* \* \*

Answer separately in dollars, if any.

A. Tillie Larrumbide's *loss of love, society, and companionship* of Julie Larrumbide, if any, *together with any associated mental anguish* sustained by Tillie Larrumbide directly pursuant to the death of Julie Larrumbide:

(1) Up to this date: $: 50,000

(2) During the probable remaining life expectancy of Tillie Larrumbide: $: –0–

B. Victor Larrumbide's *loss of love, society, and companionship* of Julie Larrumbide, if any, *together with any associated mental anguish* sustained by Victor Larrumbide directly pursuant to the death of Julie Larrumbide:

(1) Up to this date: $: 50,000

(2) During the probable remaining life expectancy of Victor Larrumbide: $: –0–

(Emphasis added). Thus, we first must determine whether the Larrumbides have preserved any complaint that the jury's "zero" answer for each of the Larrumbides' future loss of love, society, and companionship is against the great weight and preponderance of the evidence, or whether they have limited their complaint under these points of error to the evidence concerning future mental anguish.

 It is the appellant's burden to designate, in proper assignments of error and in arguments and authorities in the brief, the particular errors relied upon for reversal. *See Kansas-Texas Railroad v. McFerrin*, 156 Tex. 69, 84–85, 291 S.W.2d 931, 941 (1956); *Wright v. Gernandt*, 559 S.W.2d 864, 872 (Tex.Civ.App.—Corpus

---

1. On appeal, the Larrumbides do not complain of the reduction of the jury's award for medical, funeral, and burial expenses.

Christi 1977, no writ). This court must consider not only any issue raised by a point of error, *Brown v. U.S. Life Credit Corp.*, 602 S.W.2d 94, 96 (Tex.Civ.App.—Fort Worth 1980, no writ), but also any issue reasonably apparent from the point of error or the argument supporting it. *See Fambrough v. Wagley*, 140 Tex. 577, 585–86, 169 S.W.2d 478, 482 (1943); *Odum v. Sims*, 609 S.W.2d 881, 883 (Tex.Civ.App.—San Antonio 1980, no writ); *Brown*, 602 S.W.2d at 96. In the present case, the Larrumbides' first two points of error refer only to the jury's answer concerning future mental anguish; they do not complain of the findings as they applied to future loss of love, society, and companionship. Similarly, in their argument supporting points of error one and two, the Larrumbides refer only to the jury finding concerning future mental anguish, *e.g.*, "this award of 'zero' damages for future mental anguish ... warrants the granting of a new trial"; "the witnesses were unanimous in their conviction that the Larrumbides were going to continue to experience mental anguish"; "[Julia's] death caused the Larrumbides mental anguish. The jury, nevertheless, awarded $0 in damages for their future mental anguish ... [thus], a new trial should be ordered."[2] Even though we are mindful of the rule that points of error should be liberally construed, we are equally mindful of the rule that a fact finding by a jury which is not challenged on appeal is binding on the appellant. *See Retama Manor Nursing Centers, Inc. v. Cole*, 582 S.W.2d 196, 201 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.); *see also Newsome v. Grogan*, 599 S.W.2d 881, 883 (Tex.Civ.App.—Tyler 1980, writ ref'd n.r.e.). Thus, we hold that by failing to attack the jury's award of "zero" damages for future loss of love, society, and companionship, the Larrumbides are bound by that finding and, in reviewing points of error one and two, we will review only the evidence regarding future mental anguish to determine whether the jury's answers are against the great weight and preponderance of the evidence.

In reviewing a complaint that the jury's answer to a special issue is against the great weight and preponderance of the evidence, this court must review all the evidence and must set aside the jury verdict and remand the cause for a new trial if the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust. *See Burnett v. Motyka*, 610 S.W.2d 735, 736 (Tex.1980); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965).

At trial, Victor Larrumbide testified that, soon after Julia's death, he and his wife sought counseling with a priest and later sought counseling from Dr. Robert Gordon, a psychologist. Victor Larrumbide testified that "the primary problem was grief. We entered a period of disarray after Julie died in that we were all coping with our grief in our own ways...." He testified that Tillie Larrumbide "has high blood pressure now and she's also suffered a very severe grievance and she ... was under a doctor's care there for awhile." The evidence reflected that Tillie Larrumbide was at the hospital and was present when Julia suffered the breathing difficulties that eventually led to brain damage and her death. Victor Larrumbide testified that his wife suffers guilt, saying "I think she'll always live with that. 'If I could have taken some more action, done something else, that maybe Julie would be alive today.' I think she's going to have to live with that."

Victor Larrumbide further testified that he and his wife "can't watch television anymore, because if a hospital program comes on she'll walk out of the room or she'll tell me to change the channel." He also stated that "we can't sleep together either" because his snoring reminds Tillie Larrumbide of Julia's struggle for breath while she was in the hospital.

---

2. It appears that the Larrumbides made a deliberate decision to complain only of the jury findings concerning future mental anguish. The hospital, in its brief, pointed out that the Larrumbides had so limited their complaint; however, the Larrumbides did not file an amended or supplemental brief, nor did they, in their reply brief, inform the court that they did not intend to limit their complaint to evidence regarding future mental anguish.

Victor Larrumbide also testified that "holidays are very definitely harder, especially Mother's Day, Father's Day, and Christmas, Thanksgiving." He testified that Julia "would never give us a card without writing a personal touch ... on how much I love you." Victor Larrumbide testified that Julia was "especially close with her mother" and stated "she was just a joy. I don't know any other way to put it. I mean, when you lose something like that ... it's just a big loss."

Tillie Larrumbide testified that she consulted a medical doctor approximately one month after Julia's death. The doctor diagnosed Tillie Larrumbide's condition as "depression" and prescribed medication. Tillie Larrumbide testified that, since Julia's death, her husband "is overprotective of [their other daughter]. When [her] babies were born ... instead of being happy about the babies being born, we were very concerned." She further testified that "before we used to travel just for the fun of it. Now we travel as an obligation.... We need to keep in touch with the family...." Tillie Larrumbide also stated: "When Julie died, like a disabled person that has lost suddenly an arm or a leg, they have to adjust. I have had to adjust, but I will not ever have Julie back ... that part of me will never ever be replaced."

Monica Larrumbide Ravensway, Julia's sister, testified that her mother and Julia were very close and that if Julia had any problem "she would go straight to my mother." She also testified that the family took vacations together. When asked what effect Julia's death had on her parents, Ravensway replied: "Well, my dad ... if he's thinking about my sister, he's very quiet. He'll answer a question for you, but it hurts him a lot ... if it's a birthday or something of this nature, they're just very quiet. He's usually very joking and very happy ... but if he's got my sister on his mind, then he's just very withdrawn." Concerning her mother, Ravensway testified that "she gets very upset. She'll go back to her room. She'll start crying.... She'll just cry a lot." Ravensway also testified that, before Julia's death, Christmas was "a very big occasion" but that "after

my sister passed away they don't even set up a Christmas tree any more."

Mary Jo Burgess, a high school friend of Julia's, testified that Julia "really loved her parents" and that she "loved to go do things with her family." Burgess testified that she sees the Larrumbides occasionally and, when asked to compare their behavior before Julia's death with that after, stated: "It's so different. You can see such a loss." Burgess testified that she does not visit the Larrumbides as often as she had in the past because "she [Tillie Larrumbide] always looks like she's crying.... That's one reason we don't go over, because I just don't want to make her think of it all the time."

Mark Leonard, formerly the assistant pastor of St. Pius Catholic Church, testified that he met the Larrumbides during Julia's hospitalization and that he continued to see them for a year after Julia's death. Leonard testified that the Larrumbides "dealt with [Julia's death] very slowly." He testified that, because Julia's death was unexpected, "it cuts much deeper ... aside from the fact that you lose a family member, ... aside from the fact that you have lost this life ... your own emotions are still trying to find a reason ... and that's where you get into so much of the bitterness and the anger and the depression.... You've been cheated out of a certain part of your relationship with that person."

Dr. Robert Gordon, a psychologist, testified that he examined the Larrumbides to "determine their current psychological state and whether or not they required psychological treatment or counseling." He testified that in November 1982, when he first evaluated the Larrumbides, "it was my judgment at that time that they would benefit from psychological counseling." He continued to see the Larrumbides until February, 1984. Dr. Gordon testified that "the loss of Julie, their daughter, was devastating to [the Larrumbides], and although that loss did not impair them to the extent that they were unable to work or go about their daily affairs, it was clear that the quality of their lives had been diminished considerably, and that they were experi-

encing a profound depression." Dr. Gordon testified that, at the termination of counseling, Victor Larrumbide was not experiencing irrational guilt over Julia's death; however, Tillie Larrumbide "believed that because of her presence at the hospital when Julie died that somehow in some way she could have done something to intervene, to save Julie's life, and so this has haunted Tillie."

Carolyn Bell, an assistant professor of nursing, testified by deposition, which was admitted into evidence at trial. She testified that "that kind of traumatic event" requires "counseling and guidance to get through." She agreed that the death of a child is "life-altering" and "absolutely horrible ... and it's even worse, immeasurably worse, if you're standing there observing the process." Bell also agreed that "as a parent, that's something that's going to stay with you the rest of your life ... nothing is ever going to erase that memory or that horror." When asked whether, even after psychological or religious counseling, "you can't ever fully deal with it, can you—as a parent?", Bell replied: "I would have to guess. I would think that's true."

On cross-examination, however, Ravensway conceded that her parents are "a little better, I guess, with time." She further testified, however, that her parents "are still not a hundred percent. I don't think they ever will be." Victor Larrumbide admitted that his attorney suggested that he and Tillie Larrumbide consult with Dr. Gordon. Dr. Gordon testified that he no longer sees the Larrumbides because "at the time of discharge in February of 1984, ... I had already accomplished what I set out to accomplish, and that is to stabilize themselves emotionally, to see that they were happier and more productive ... and to be more optimistic about their future. For that reason, in February I believed that those matters had been accomplished...." Dr. Gordon testified that Julia's death "drew [the Larrumbides] closer to one another ... their love for one another surfaced." Finally, Dr. Gordon agreed that what the Larrumbides suffered "is what would be normal grief for a situation such as [they] encountered," but "that which stimulated them to grieve the loss of their daughter is certainly not normal or predictable."

Mental anguish is a heightened emotional injury beyond ordinary grief; it encompasses keen and poignant mental suffering, a high degree of mental suffering, or an intense pain of mind or body. *See Roberts v. U.S. Home Corp.*, 694 S.W.2d 129, 136 (Tex.App.—San Antonio 1985, no writ); *Freedom Homes of Texas, Inc. v. Dickinson*, 598 S.W.2d 714, 718 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.); *Ryder Truck Rentals, Inc. v. Latham*, 593 S.W.2d 334, 339 (Tex.Civ.App.—El Paso 1979, writ ref'd n.r.e.). Damages recoverable for mental anguish should be for actual mental injuries, rather than for mere fear, anger, or sorrow. *See Bedgood v. Madalin*, 600 S.W.2d 773, 779 (Tex.1980) (Spears, J., concurring), *overruled on other grounds, Sanchez v. Schindler*, 651 S.W.2d 249 (Tex.1983).

At trial, the jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *First City Bank—Farmers Branch v. Guex*, 659 S.W.2d 734, 739 (Tex.App.—Dallas 1983), *aff'd*, 677 S.W.2d 25 (Tex.1984). It is the sole province of the trier of fact to resolve conflicts in the testimony of one witness with the testimony of another witness, or to believe portions of one witness's testimony and to disregard other portions. *Williams v. Lemens*, 609 S.W.2d 596, 600 (Tex.Civ.App.—Austin 1980, no writ). Matters of future pain and suffering, future physical impairment, and future mental anguish are necessarily speculative and it is peculiarly within the province of the jury to resolve the issue and set the amount of such damages. *See Kraatz v. Faubion*, 617 S.W.2d 277, 279 (Tex.Civ.App.—Eastland 1981, no writ); *Chappell v. Dwyer*, 611 S.W.2d 158, 160 (Tex.Civ.App.—El Paso 1981, no writ).

■ In the present case, Dr. Gordon testified that the Larrumbides suffered "what would be normal grief" and testified that he no longer counseled the Larrumbides

because his goals of "stabilizing" the Larrumbides and seeing that they were happier had been achieved. In addition, the jury was free to conclude that the testimony that Victor Larrumbide is "quiet" on holidays, that Tillie Larrumbide cries, and that each parent suffered a loss when Julia died was simply evidence of the ordinary grief any parent would suffer after the loss of a child. In addition, trial was held over five years after Julia's death and Ravensway conceded that her parents were "a little better, I guess, with time." Thus, the jury could have concluded that the mental anguish suffered by the Larrumbides was past, that the damages awarded for past mental anguish adequately compensated them for their mental anguish, and that, in the future, the Larrumbides would likely suffer ordinary grief, but not compensable mental anguish. Accordingly, we hold that the jury's award of zero damages to each of the Larrumbides for their future mental anguish was not against the great weight and preponderance of the evidence. We overrule the Larrumbides' first and second points of error.

In their third point of error, the Larrumbides contend that the trial court erred in failing to award them $1,000,000 as exemplary damages in accordance with the jury's answer to special issue number seven. Alternatively, the Larrumbides contend in their fourth point of error that the trial court erred in refusing to grant their motion for new trial because the jury's answers to special issue number six, absolving the hospital of acts of gross negligence, and the jury's answer to special issue number seven, assessing $1,000,000 exemplary damages against the hospital, are in conflict.

Special issue number six asked whether the hospital, through its managerial employee Sharon Smart, was grossly negligent by failing to give advance notice to the respiratory therapy department that an oral surgery patient with her jaws wired shut was present in the hospital, or by failing to adequately instruct and supervise a nurse. In addition, special issue number six asked whether the hospital knowingly failed to maintain an adequate staff in its respiratory department. The jury answered "no" to each of these questions; accordingly, it did not answer the proximate cause special issues concerning these acts.

In response to special issue number seven, which was not conditioned on an affirmative answer to special issue number six, the jury awarded the Larrumbides $1,000,-000 as exemplary damages against the hospital. That special issue instructed the jury that "a party to a lawsuit may recover exemplary or punitive damages if the other party is found to have acted with gross negligence, as that term is defined herein." Thus, the Larrumbides argue that the jury found some act of the hospital, other than those listed in special issue number six, to be grossly negligent and that, on that basis, the trial court should have awarded exemplary damages. We disagree.

The Larrumbides did not request submission of special issues concerning whether other acts of the hospital constituted gross negligence, nor did they object to the omission of such issues. Ordinarily, the party with the burden of proof on the issue must tender to the court a substantially correct proposed issue. *Cannan v. Varn*, 591 S.W.2d 583, 587 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.). Failure to request submission of special issues which, if answered favorably to the requesting party, would form the basis for judgment in his favor upon a ground of recovery, waives any right to that ground of recovery. *Chernoff v. Chernoff Brothers, Inc.*, 597 S.W.2d 24, 27 (Tex.Civ.App.—Waco 1980, no writ). When a trial court submits part of the elements necessary to sustain a ground of recovery, however, and, without objection, omits another element for which there is evidence to support a finding thereon, the issue itself is not waived. *Wichita Falls & Oklahoma Railway v. Pepper*, 134 Tex. 360, 372–73, 135 S.W.2d 79, 85 (1940), *overruled on other grounds, Burk Royalty Co. v. Walls*, 616 S.W.2d 911 (Tex.1981); *Wilson v. Remmel Cattle Co.*, 542 S.W.2d 938, 942 (Tex.Civ. App.—Amarillo 1976, writ ref'd n.r.e.). In such a situation, the parties have simply waived jury trial on the unsubmitted ele-

ments and have submitted those elements to the trial court for resolution. *Wilson*, 542 S.W.2d at 942. *See* TEX.R.CIV.P. 279. In the absence of written findings by the trial court, the omitted factual issues are deemed to have been decided in a manner supporting the trial court's judgment. *Id.* Thus, in the present case the parties waived jury determination of whether any other acts of negligence raised by the evidence constituted gross negligence and, because the trial court made no written findings, those acts are deemed to have been found by the trial court not to be grossly negligent. Accordingly, we reject the Larrumbides' contention that the jury's answer to special issue number seven constitutes a finding that some act of the hospital, other than those acts listed in special issue number six, was grossly negligent. We overrule the Larrumbides' third point of error.

■ In their fourth point of error, the Larrumbides alternatively contend that a fatal conflict exists between the jury's answers to special issues numbers six and seven. The test for determining whether a fatal conflict exists between answers to special issues is whether "taking the finding alone in the one instance, a judgment should be entered in favor of the plaintiff; and taking it alone in the other, judgment should be entered in favor of the defendant." *Little Rock Furniture Manufacturing Co. v. Dunn*, 148 Tex. 197, 206, 222 S.W.2d 985, 991 (1949); *quoting Howard v. Howard*, 102 S.W.2d 473, 475 (Tex.Civ.App.—Austin 1937, writ ref'd). In the present case, the jury's answers to special issue number six, taken alone, clearly support judgment in favor of the hospital, because the jury's answers absolved the hospital of the listed acts of gross negligence. The Larrumbides contend, however, that the jury's answer to special issue number seven, taken alone, supports judgment in their favor, because the jury was instructed that it could award exemplary damages "if the other party is found to have acted with gross negligence, as that term is defined herein." In effect, the Larrumbides contend that the jury's award of exemplary damages included, under the instruction

given, a finding that the hospital was grossly negligent. We disagree.

A similar contention was rejected in *Ruiz v. Flexonics*, 517 S.W.2d 853, 855–56 (Tex. Civ.App.—Corpus Christi 1974, writ ref'd n.r.e.). There, the jury failed to find that use of a hose manufactured by the defendant was the producing cause of the plaintiffs' injuries. *Id.* at 854. The jury, however, awarded damages to the plaintiffs pursuant to special issues that asked what sum of money would compensate the plaintiffs for injuries which "resulted in whole or in part from the use of the hose." *Id.* at 855–56. In rejecting the plaintiffs' argument on appeal that "each of the damage issues have causation built into them and they, therefore, conflict with the producing cause issues," the court held that the producing cause issues were submitted to determine specifically and directly whether plaintiffs established liability on the part of the defendant and that the damage issues were submitted and understood by the jury to be damage or value issues. *Id.* at 856. Accordingly, the court held that no irreconcilable conflict existed. Instead, the court held that the answers to the damage issues were immaterial. *Id. See also Griffin v. Phillips*, 542 S.W.2d 432, 435 (Tex.Civ.App. —Eastland 1976, writ ref'd n.r.e.) ("in view of the jury's [negative] answer to [a special issue asking whether the defendants' false representations were made knowingly or with reckless disregard for the truth], the exemplary damage issue became an immaterial issue and the court properly disregarded the issue").

Thus, in the present case, once the jury failed to find, in response to special issue number six, that the hospital was grossly negligent, the jury's answer to special issue number seven awarding the Larrumbides exemplary damages was immaterial and the trial court correctly disregarded it. We overrule the Larrumbides' fourth point of error.

In their fifth point of error, the Larrumbides contend that the trial court erred in failing to award them prejudgment interest. The trial court rendered judgment that the Larrumbides take nothing against

the hospital, because the jury award did not exceed the set-off for the contributing tortfeasors. The Larrumbides contend, however, that had prejudgment interest been added to the jury's award of damages, the amount would have exceeded the set-off for the contributing tortfeasors and the Larrumbides would have been entitled to recover judgment against the hospital for the amount exceeding the set-off.

■ In their trial pleadings, the Larrumbides prayed for damages, "together with interest ... and for such other and further relief, both general and special, to which Plaintiffs may show they are justly entitled." Assuming that this prayer was sufficient to support an award of prejudgment interest, *see United States Fidelity and Guaranty Co. v. Eastern Hills Methodist Church*, 609 S.W.2d 298, 301 (Tex.Civ.App. —Fort Worth 1980, writ ref'd n.r.e.); *T.J. Service Co. v. Major Energy Co.*, 552 S.W.2d 598, 601 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.), we hold that, by failing to request an award of prejudgment interest in their motion for judgment, or to complain in the trial court of the failure to award prejudgment interest, the Larrumbides waived any error.

■ It is well settled that, in order to present a complaint concerning prejudgment interest by crosspoint of error, an appellee must in some way inform the trial court of its dissatisfaction with the judgment; otherwise, the error is waived. *See e.g., McLemore v. Johnson*, 585 S.W.2d 347, 349 (Tex.Civ.App.—Dallas 1979, no writ); *Western Construction Co. v. Valero Transmission Co.*, 655 S.W.2d 251, 255–56 (Tex.App.—Corpus Christi 1983, no writ); *Foshee v. Republic National Bank of Dallas*, 600 S.W.2d 358, 364 (Tex.Civ.App.—Tyler 1980), *rev'd on other grounds*, 617 S.W.2d 675 (Tex.1981). Our research has revealed only one case in which this rule has been applied to an appellant who seeks to complain of the judgment on appeal, *see Reliance Insurance Co. v. Dahlstrom Corp.*, 568 S.W.2d 733 (Tex.Civ.App.—Eastland 1978, writ ref'd n.r.e.); however, we see no reason why the rule should not be applied equally to appellants and to appellees complaining on appeal by crosspoint of error. In either instance, the trial court should be given the opportunity to provide the relief requested and to correct any error.

We realize that, other than *Western Construction*, each of the cases cited above was decided under a former version of rule 324 of the Texas Rules of Civil Procedure, which required that a complaint not otherwise ruled on by the trial court be presented in a motion for new trial. Removal of this language from rule 324, however, did not eliminate the requirement that a complaint be presented to the trial court in some way in order to preserve the point for review. *See Western Construction*, 655 S.W.2d at 256 ("the purpose of the amendment [to rule 324] is to make more liberal the prerequisites of appeal once a point of error has been preserved.... We therefore hold that appellee has waived its right to complain on appeal of the trial court's failure to award prejudgment interest, not because appellee failed to include the complaint in a motion for new trial, but rather because the complaint was not preserved by bringing it to the attention of the trial court"). Instead, the requirement that a party present its complaint to the trial court is now contained in rule 52(a) of the Texas Rules of Appellate Procedure.

■ Rule 52(a) provides:

In order to preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling he desired the court to make if the specific grounds were not apparent from the context. It is also necessary for the complaining party to obtain a ruling upon the party's request, objection or motion. If the trial judge refuses to rule, an objection to the court's refusal to rule is sufficient to preserve the complaint. It is not necessary to formally except to rulings or orders of the trial court.

TEX.R.APP.P. 52(a). The Larrumbides did not object to the trial court's judgment after it was rendered, nor did they file a motion to modify the judgment to award

**694**

them prejudgment interest. They contend, however, that their motion for judgment requested prejudgment interest sufficiently to satisfy rule 52(a). We disagree. In their motion for judgment, the Larrumbides prayed that the trial court award them damages, "together with interest thereon, from the date of this final judgment until paid by Defendant." The phrase "from the date of this final judgment until paid" clearly refers to the request for interest; to pray for "damages and prejudgment interest from the date of this final judgment" would be nonsensical. Thus, we hold that the Larrumbides, in their motion for judgment, requested only that postjudgment interest be awarded and that, by failing to request an award of prejudgment interest in their motion for judgment, or to object to the trial court's failure to award prejudgment interest before setting off the contributing tortfeasor's settlement against the jury award, the Larrumbides waived any error. We overrule the Larrumbides' fifth point of error.

 In their sixth point of error, the Larrumbides contend that the trial court erred in permitting Ken Thompson to testify. At trial, the hospital called Thompson as a witness; however, the Larrumbides objected because the hospital had failed to supplement its answers to interrogatories to provide the Larrumbides with Thompson's current address. In response to the Larrumbides' objection, the trial court offered to allow them to depose Thompson and the following colloquy occurred:

THE COURT: Let's proceed with the man's deposition and you may renew your motion after you've heard the man's deposition.

[LARRUMBIDES' COUNSEL]: Your Honor, we object, that we cannot adequately take a discovery deposition and prepare to meet the testimony of a brand new expert, namely, a respiratory therapist.

THE COURT: I'll pass on that after I hear his testimony. If you want to take this deposition at this time, I'll give you the privilege.

[LARRUMBIDES' COUNSEL]: All right, Your Honor.

After taking Thompson's deposition, the Larrumbides made no further objection to Thompson's testimony and the trial court never ruled on the Larrumbides' previous objection. Thus, because the Larrumbides failed to obtain a ruling on their objection, they waived any error in permitting Thompson to testify. *See Perez v. Baker Packers,* 694 S.W.2d 138, 141 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.); *Winkel v. Hankins,* 585 S.W.2d 889, 892 (Tex.Civ.App.—Eastland 1979, writ dism'd); TEX.R.APP.P. 52(a). We overrule the Larrumbides' sixth point of error.

The trial court's judgment is affirmed.